ARVIE WEBB (ALIAS A. WEBB) v. THE STATE.

No. 18891. Delivered April 21, 1937.
State's Rehearing Denied June 23, 1937.

The opinion states the case.

*J. R. Bogard,* of San Augustine, *J. R. Anderson,* of Center, and *J. B. Forse,* of Newton, for appellant.

*Minton & Minton,* of Hemphill, *E. A. Lindsey,* of Newton, *Hollis Kinard,* District Attorney, of Orange, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of the offense of murder with malice, and his punishment was assessed at confinement in the state penitentiary for a term of ten years.

The offense occurred in Sabine County and the appellant was indicted by the grand jury of said county, but the court on his own motion changed the venue of the case to Newton County. The testimony offered by the State upon the trial, briefly stated, shows that on the afternoon of July 8, 1934, the appellant, deceased, and Paul Chapman went across the Sabine River into the State of Louisiana to Pendleton's Ferry where a saloon was being operated with the purpose of getting some beer. At the saloon they met Collins and Holmes. Appellant became involved in a quarrel with Holmes and drew an ax on him. Soon thereafter appellant engaged in a fight with Collins who was a very small man. The deceased interceded on behalf of Collins by requesting appellant not to strike Collins as he was too small. This brought about some unpleasantness between deceased and appellant. The trouble quieted down and the parties all got into their automobile and started home. After they crossed the river and entered Sabine County, an argument arose between appellant and deceased which they finally agreed to settle by mutual combat. Chapman, who was driving the car, requested the deceased to take off his gun and deliver it, together with his knife, to him. Deceased complied with the request and then proceeded to get out of the car. Appellant, who had already gotten out of the car, struck the deceased on the head with an ax inflicting serious bodily injury upon him. Deceased was immediately taken to a doctor's office at the town of Hemphill and on the following morning was removed to a hospital at Nacogdoches where he remained for a period of about ten days. He was then taken home where he remained for a time, then taken back to the hospital for a short time and then back home. In about three weeks before he

died, he was again taken to the hospital at Nacogdoches. The doctor testified that the ax penetrated the skull, injured the brain tissues, and was the cause of his death. Appellant did not testify, but he offered witnesses who testified that they talked with deceased from time to time up to a short time before his death; that deceased repeatedly stated that he was as much to blame for the unfortunate occurrence as the appellant. It seems it was appellant's contention that the conversations of the deceased with the witnesses did not show facts which would constitute murder.

By several bills of exception appellant complains of the action of the trial court in admitting, over his objection, as evidence the dying declaration of the deceased on the ground that a proper predicate had not been laid for its admission. We cannot agree with him. The testimony shows that on the morning before the deceased was taken to the hospital for the last time he was conscious of approaching death; that he said there was no use to take him to the hospital; that he was going to die and then related to his wife in the presence of C. L. Jones of how, where, and by whom he was injured and all the facts and circumstances relating thereto, which were, in substance, as we have hereinabove set them out. It appears from the record that at the time he, deceased, made the statement his mind was normal; that he was conscious of approaching death and had no hope of recovery; that he related all the facts as they occurred at the time he received the fatal injury, including what transpired at the saloon and on their return trip; that said statement was voluntarily made and not in response to any questions. We think that under the rule announced by this court in the following cases the predicate as laid was sufficient to authorize the admission of said statement as a dying declaration: Fulcher v. State, 28 Texas Crim. Rep., 465; Walker v. State, 88 Texas Crim. Rep., 389; Crockett v. State, 45 Texas Crim. Rep., 276 (280); Hunter v. State, 54 Texas Crim. Rep., 224 (228); Francis v. State, 170 S. W., 779; Texas Jurisprudence, Vol. 22, p. 879.

Appellant next complains because the court declined to sustain his motion to dismiss this case or to discharge the jury, enter a mistrial, and continue the case on the ground that the court had not acquired jurisdiction of the person and subject matter of this suit, in this: that the clerk of the District Court of Sabine County had not made and transmitted to the clerk of the District Court of Newton County, the county to which the venue was changed, a certified copy of the order changing

venue. The record discloses that the order changing the venue in this case was made on the 12th day of May, 1936, and entered of record in Volume B on pages fourteen and fifteen of the minutes of the District Court of Sabine County; that all of the original papers, together with the order changing venue, were transmitted by the district clerk of Sabine County to the district clerk of Newton County and there filed. Upon an application of the district attorney the court issued a writ of certiorari commanding the clerk of Sabine County to immediately transmit to the clerk of Newton County a certified copy of the order changing venue and also a copy of the recognizance, and directed the clerk of Newton County to file the same nunc pro tunc. This was done. We see no error in this respect. The order changing the venue in this case from Sabine to Newton County conferred jurisdiction upon the district court of the latter county. The court's order changed the venue; the certified copy thereof was merely evidence of the change of venue. The certified copy of the order did not have anything to do with conferring jurisdiction upon the district court to try him in the new forum because that right already existed by virtue of the order. However, the original order made by the court was transmitted with all the original papers to the district clerk of Newton County after it had been recorded in the minutes as provided by law. Therefore the law with respect to change of venue was substantially complied with. In support of what we have said we refer to the cases of Ex parte Haley, 88 Texas Crim. Rep., 649; Hill v. State, 59 S. W. (2d) 411.

Appellant by proper bill of exception complains of the testimony of Mrs. Noble Harris as to the kind of shoes deceased was wearing at the time he received the fatal injury. No reason is assigned by appellant why or in what manner said testimony injuriously affected him. The shoes were not offered in evidence, nor did the testimony show that there was anything about the shoes which might have prejudiced the jury against him. Unless it is made to appear that the admission of irrelevant testimony was hurtful or in some way injuriously affected the appellant, we would not be authorized to reverse this case.

By bills of exception numbers five, ten, fourteen, fifteen, seventeen, and nineteen appellant complains of the action of the trial court in permitting Mrs. Harris to testify that the deceased told her, on the morning before he was taken to the hospital the last time, that he, in company with Paul Chap-

man and appellant, went across the river to Pendleton's Ferry; that while there they met Collins and Holmes; that appellant got into a fuss with Holmes and drew an ax on him; that he got into a fight with Collins who was a small man; that he, deceased, interceded in behalf of Collins which precipitated a fuss between deceased and appellant; that on their return trip the fuss was renewed and they mutually agreed to settle it by personal combat; that Chapman stopped the car and requested deceased to turn over to him, Chapman, his gun and knife, which he did. Appellant objected to said testimony on the ground that it was hearsay and no proper predicate had been laid for its admission; that it was an occurrence which happened anterior to the fatal difficulty and was but a conclusion on the part of the declarant; that it was not a statement of any part of what occurred at the immediate time and place of the fatal difficulty, but related to different and extraneous offenses by defendant and a third party. The court qualified each of said bills and in his qualification states in substance that he admitted the declaration testified to by Mrs. Harris as to the difficulty the defendant had with one Holmes and Collins because it was shown by the testimony of said witness that the deceased's interference on behalf of Collins occurred on the same afternoon on which defendant is alleged to have struck the fatal blow, and that the deceased and defendant first started fussing about the appellant wanting to fight such a small man as Collins. In other words the trial court was of the opinion that all the matters relating to the first differences between appellant and deceased up to and including the fatal blow were admissible. We fail to see how that part of the statement as to what deceased said with reference to going to the saloon in company with appellant and Chapman and what occurred at the saloon in the State of Louisiana between appellant, Holmes, and Collins can be said to be a statement of the circumstances of the death. These were separate and distinct transactions which occurred at a different time and place from the transaction between appellant and deceased when the fatal blow was struck, and, therefore, do not come within the rule of dying declarations. Hence the admission of the same was error. As a general rule dying declarations are admitted from the necessity of the case to identify the prisoner and deceased; to establish the circumstances of the res gestae and to show the transaction from which death resulted. When, however, they relate to former and distinct transactions, they do not come within the principle of necessity.. See Hill v. State, 88 Texas Crim.

Rep., 179 (182); Kennamer v. State, 93 Texas Crim. Rep., 430; Edmondson v. State, 292 S. W., 231; Simmons v. State, 3 S. W. (2d) 449; Whiteside v. State, 12 S. W. (2d) 218.

By several bills of exception appellant complains of the testimony given by Mrs. Noble Harris, as to statements made to her by the deceased, to the effect that Paul Chapman said immediately after appellant had struck the fatal blow, "You played hell; you have killed the best friend you ever had"; that Chapman also said, "Well, let's tell it this way"; and Arvie Webb said, "Let's tell he drew a gun on me." Appellant objected to this on the ground that it was hearsay; that no proper predicate had been laid for its instruction; that it was not res gestae of the alleged difficulty and occurred subsequent thereto. We are not in accord with him. It is our opinion that the statement made immediately after the fatal blow had been struck was a part of the res gestae, in that, it related to the immediate criminal act, and, therefore, was admissible in evidence. See Eggleston v. State, 59 Texas Crim. Rep., 542; Weathersby v. State, 29 Texas Crim. Rep., 278; Medina v. State, 43 Texas Crim. Rep., 52. The general rule is, and we think a correct one, that a witness who relates the dying declaration may testify to whatever the declarant might properly have testified to if he were alive.

Appellant also complains of the court's charge in that the court failed to instruct the jury on the law of self-defense. If there was any evidence in the case which raised the issue, then appellant would have been entitled to such an instruction. A careful examination of the record fails to disclose any testimony which would have justified the desired instruction. There is not a scintilla of evidence from any source in the record that appellant claimed he acted in self-defense or which even remotely indicates that he did so.

For the error hereinabove discussed the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We have carefuly considered the State's motion for rehearing herein in connection with the authorities cited in the motion, but find ourselves unable to

agree that the matters contained in the dying declaration of the deceased were admissible. There seems no question but that the testimony showed that said declaration covered a length of time and a number of incidents which could hardly be included within the doctrine of res gestae.

The State's motion for rehearing is overruled.

*Overruled.*