BLEDSOE *v.* STATE OF INDIANA.

[No. 28,121.   Filed December 20, 1945.]

676

*Ira M. Holmes,* of Indianapolis, and *Elza O. Rogers* and *Charles R. Swaim,* both of Lebanon, for appellant.

*James A. Emmert,* Attorney General, and *Frank E. Coughlin,* First Assistant Attorney General, for the State.

RICHMAN, J.—Appellant was one of three defendants held to answer a joint indictment for murder in the Criminal Court of Marion County. While the others were on trial the court on appellant's motion ordered the venue as to him changed to Boone county, the order directing that a certified copy of the indictment, in lieu of the original, be delivered with the transcript to the clerk of the Boone Circuit Court. After a five-day jury trial with verdict of guilty appellant, for the first time, by motions in arrest of judgment and for a new trial raised the question, now before us, that without delivery of the original indictment to the court below it did not acquire jurisdiction. There is support for this con-

tention in early Indiana cases. If they are sound they should be followed, otherwise overruled.

When an accused voluntarily appears or is held on warrant to answer an indictment or affidavit filed in a court which has the power to hear and determine his guilt of the kind of offense with which he is charged, the court has jurisdiction. These elements of jurisdiction—subject matter and person—may not be waived. But the procedural steps by which jurisdiction is invoked are not themselves jurisdictional and, generally speaking, may be waived.

"Venue in its modern and municipal sense relates to and defines the particular county or territorial area within the State or district in which the cause or prosecution must be brought or tried. It commonly has to do with geographical subdivisions, relates to practice or procedure, may be waived, and does not refer to jurisdiction at all." *Paige* v. *Sinclair* (1921), 237 Mass. 482, 130 N. E. 177. See also 67 C. J. 12.

The court seems not to have observed the distinction between jurisdiction and venue when the cases cited by appellant, and supplemented by our own research, were establishing the rule upon which appellant relies. The line of cases began in 1845 with *Doty* v. *State* (1845), 7 Blackf. 427, and stopped rather abruptly in 1883 with *Keith* v. *State* (1883), 90 Ind. 89, although in two comparatively recent cases, *State* v. *Mabrey* (1927), 199 Ind. 276, 157 N. E. 97, and *Tokacs* v. *State* (1930), 202 Ind. 259, 173 N. E. 453, there is language seeming to assume the validity of the rule. Intervening cases are listed chronologically as follows: *Engleman* v. *State* (1850), 2 Ind. 91; *Sawyer* v. *State* (1860), 16 Ind. 93; *Pulling* v. *State* (1861), 16 Ind. 458; *Adell* v. *State* (1870), 34 Ind. 543; *Bailey* v. *State* (1872), 39 Ind. 438; *Fawcett* v. *State* (1880); 71 Ind. 590; *Leslie*

v. *State* (1882), 83 Ind. 180; *Duncan* v. *State* (1882), 84 Ind. 204; *Powers* v. *State* (1882), 87 Ind. 144; *Bright* v. *State* (1883), 90 Ind. 343. Not all of them apply the rule. In some it is recognized by way of dictum. In *Bright* v. *State, supra,* the court reached the unusual conclusion that the original affidavit for change of venue is not an original paper within the meaning of the change of venue statutes.

*Doty* v. *State, supra,* was decided at a time when the procedure on change of venue in a criminal case was governed by the 1824 statute applying to civil cases. See R. S. 1838, pp. 601-603. Then no transcript on change of venue was required. It was the clerk's duty

> "to send forward the papers in said suit, by some meet person employed by such clerk to such court having jurisdiction in similar cases . . . and the court to which such papers are sent, shall be and is hereby vested with full power, authority and jurisdiction . . . ."

The court stated that there was nothing in the record to show that the indictment was ever filed in the court to which venue was transferred, and though there was a transcript (not required) containing a copy of the indictment the court lacked jurisdiction. If jurisdiction did not exist, of course the judgment was void. And there the court should have stopped but it seemed to think it necessary to assign as a further reason for reversing the judgment error in the charge to the jury.

The Doty case is the only pertinent authority cited in *Sawyer* v. *State, supra,* decided after the 1852 Revision which contained procedural requirements applying only to criminal cases. These are found in 2 R. S. 1852, p. 371, §§ 78 and 79, and 2 Gavin & Hord, p. 406. The sections have been amended in several respects but occupy the same relative positions in all subsequent

revisions. See §§ 1771 and 1772, R. S. 1881, and §§ 9-1305 and 9-1306, Burns' 1942 Replacement. Most of the cases above cited were decided while either the 1852 or 1881 Revisions was in force. There has been no change in the following language in § 78, *supra:*

> "The clerk must thereupon make a transcript of the proceedings and order of court, and having sealed up the same with the original papers, deliver them to the sheriff, who must without delay deposit them in the clerk's office of the proper county, and make his return accordingly."

This sentence was followed immediately by § 79, reading:

> "The jurisdiction of the latter court is complete, and the cause must be docketed and stand for trial at the first term."

The proximity of these two sentences may have led the court to believe that strict compliance with the former was a condition precedent to the acquisition of jurisdiction. This, we think, was unnecessarily read into the statute. It is just as logical to believe that the legislative intent behind the words:

> "The jurisdiction of the latter court is complete . . . . ," was to make clear that the court to which the

case was transferred should have as complete jurisdiction as the court from which it came. The legislature could not have been unmindful of the provisions in both the 1816 and 1851 Constitutions that

> ". . . the accused shall have the right to a public trial . . . in the county in which the offense shall have been committed . . . ." Art. I, § 13 of each Constitution.

and of the statutory provisions that the indictment must be returned in that county and that

"Every criminal action must be tried in the county where instituted, except when otherwise provided . . . ." See 2 R. S. 1852, p. 370, § 75, and § 9-201, Burns' 1942 Replacement.

In view of these provisions, assurance that the court receiving the case on change of venue should have "complete" jurisdiction may have been thought necessary. Other than this proximity of the two sections the only reason which suggests itself to us, and it is not stressed in the cases, is the court's disposition during those years to treat statutory procedural requirements as mandatory and not directive.

Even while this rule was becoming established the court in several cases recognized that venue was procedural and that the statutory provisions might be waived. In *Bosley* v. *Farquar* (1827), 2 Blackf. 61, the court said:

"In reviewing those proceedings, we cannot but perceive that the objection to the jurisdiction of the *Washington* Circuit Court comes too late. If the venue had not been regularly changed, or not changed at all, from *Orange* to *Washington*, this matter should have been rectified in the *Washington* Circuit Court, before any other proceedings were had in the case. As no objection was then made, nor in fact made at any time in that Court, none can avail here."

Again in *Burnham* v. *Hatfield* (1838), 5 Blackf. 21, Judge Blackford said:

"This suit was commenced in *Allen* County, and removed by a change of venue to *Huntington*.

"There are some objections made to the form of the order for the change of venue, but they come too late. They were waived by pleading to the action in the *Huntington* Circuit Court."

From *Clark* v. *State* (1853), 4 Ind. 268, we quote:

"It was competent for the *Rush* Circuit Court to grant a change of venue in the cause back to the *Henry* Circuit Court, upon a proper application. It did grant such change, and the defendant consented to it, and afterwards appeared in the cause in the latter Circuit Court. If there was anything irregular, therefore, in the manner of taking the change, it was waived by the defendants."

See also *Wall* v. *State* (1864), 23 Ind. 150, 155; *App* v. *State* (1883), 90 Ind. 73. In *O'Brien* v. *State* (1890), 125 Ind. 38, 25 N. E. 137, the opinion discloses doubt of the necessity of filing the original papers and a belief that the failure so to file was an irregularity susceptible of correction and one that might be waived.

Soon thereafter came *Burrell* v. *State* (1891), 129 Ind. 290, 28 N. E. 699, wherein jurisdiction was questioned because of a defective transcript from the Jackson to the Orange Circuit Court. The court said:

"When the change of venue was granted and the cause ordered transferred to the Orange Circuit Court, it became the duty of the clerk of the Jackson Circuit Court to make and transmit a correct transcript, together with the files. Whenever he learned in any manner that he had forwarded an imperfect transcript, he had the right, and it was his duty, to correct his mistake, and thus comply fully with the order made. It is therefore not material whether the Orange Circuit Court was, or was not, authorized to make an order requiring him to do his duty. It is not denied that the last transcript is correct and complete.

"In our opinion, if the appellant was in a position to raise the question, it would not avail him. We think, however, he is precluded by the record from raising this point, even if there is any merit in it. The record of the Orange Circuit Court shows, as above stated, that on the 14th day of October, 1889, the cause was continued 'by consent of the parties.' While the record does not other-

wise affirmatively show that the appellant was in court at that time, it will be presumed that he was, as every legal presumption favors the action of the court. *Welsh* v. *State*, 126 Ind. 71.

"It will be presumed, therefore, that the accused voluntarily appeared in the Orange Circuit Court at that time and submitted himself to its jurisdiction, and consented to a continuance. At that time a transcript and the files were in fact on file in that court, and such appearance and agreement constitute a waiver of any mere technical informality in the transmission and certification of the papers."

The concurring opinion of Judge Martin in *Stephenson* v. *Daly* (1927), 200 Ind. 196, 205, 158 N. E. 289, 292, discloses the contention that because the clerk of the originating court had not signed the transcript the other court did not acquire jurisdiction. This was declared to be a "technical informality" which could be waived. See also *Kirschbaum* v. *State* (1925), 196 Ind. 512, 149 N. E. 77.

Other than as above set forth we find no Indiana cases shedding light on the subject. We therefore turn to cases from other jurisdictions. It has been held in numerous cases, and we think it is the general rule, that the jurisdiction of the court of origin ceases when its order is made changing the venue. The order itself vests jurisdiction in the other court. *State* v. *Hibbard* (1907), 76 Kan. 376, 92 P. 304; *Patterson* v. *State* (1937), 234 Ala. 342, 175 So. 371 (Cert. denied, 302 U. S. 733, 58 S. Ct. 121, 82 L. Ed. 567) ; *State* v. *Marty* (1925), 52 N. D. 478, 203 N. W. 679; *Ex Parte Lancaster* (1921), 206 Ala. 60, 89 So. 721, 18 A. L. R. 706; *State* v. *Thomas* (1923), 301 Mo. 603, 256 S. W. 1028; *Webb* v. *State* (1937), Tex. Crim. App., 106 S. W. (2d) 683; *State* v. *Morgan* (1920), 147 La. 205, 84 So. 589 (Cert. denied 253 U. S. 498, 40 S. Ct. 588, 64 L. Ed. 1032) ; *Rooks* v. *Marks* (1942), 59 Ariz. 348, 129 P.

(2d) 303 (quoting from *Brown* v. *Gilmor's Executors* (1855), 8 Md. 322, and *Fisk* v. *Albany R. Co.* (1870), 41 How. Prac. N. Y. 365), from the headnotes in the latter as follows:

"Where an order is made, *changing the place of trial* in a cause to another county, the change is effected *at once.* The transfer of papers is a subsequent clerical duty."

See also 22 C. J. S. *Criminal Law,* § 215, p. 340.

We are aware that there is authority in Indiana for the view that the jurisdiction of the second court is not invoked until a transcript is there filed. See ■ *Fawcett* v. *State, supra; App* v. *State, supra; State* v. *Mabrey, supra; Stephenson* v. *Daly, supra.* Frequently a problem arises, more particularly with reference to the power to make emergency interlocutory orders, as to which of the two courts has jurisdiction in the interval between the order of transfer and the filing of the transcript in the other court. We are not now concerned with this problem. Nor are we here dealing with a civil case where the cost of transcript must be paid before the clerk transmits the papers. See § 2-1406, Burns' 1933. There is no such provision in the statutes relating to change of venue in criminal cases. For present purposes it is sufficient to say that if the order itself does not change the venue, the filing of the transcript, even though defective, does invoke the jurisdiction of the court. Our inquiry is therefore confined to the question as to whether or not the presence of the original indictment in the court which tries the case is indispensable or its absence is an irregularity which like other irregularities in procedure on change of venue may be waived. All of the cases from other jurisdictions above cited sustain the latter conclusion.

It appears in *John, a slave* v. *State* (1841), 2 Ala. 290, that there was a statutory right to a change of venue but that the procedure for completing the change was prescribed by a rule of the Supreme Court. The court said:

"The rule was not intended to apply to criminal cases, where more persons than one are indicted, when one only shall apply for a change of venue. In such a case, if the accused makes out a sufficient cause, he is entitled by statute, to a change of venue; but the original papers of right appertain to the Court, which retains jurisdiction over such of the accused, as do not desire, or cannot procure a change of venue. A transcript of the record, which must necessarily include a transcript of the indictment, as well as of all other original papers, is all which can regularly be transmitted to the Court, to which the venue is changed. The accused, who under such circumstances, asks for a change of venue, may be tried on such a transcript, and his consent, if that is to be considered as essential, will be infered from his application. If the practice was otherwise, the monstrous absurdity might result, that the prosecution against the others accused, might be terminated, or indefinitely delayed, by the measure of grace accorded the one, who sought elsewhere a trial which he might not obtain in an impartial manner in the county where the indictment was prefered.

"We do not mean to be understood that a prosecution must fail, if in such a case as this, the original papers instead of a transcript, are transmitted in consequence of an irregular order, such as we have noticed. The law of such a case can be determined when it shall arise."

In *State* v. *Marty, supra,* the North Dakota statute was said to have been adopted from California. Overruling the contention that the clerk's failure immediately to prepare and transmit a transcript prevented the acquisition of jurisdiction, the court quoted from

*People* v. *Suesser* (1904), 142 Cal. 354, 358, 75 P. 1093, 1095:

"The statute provides that an order must be made 'transferring the action,' and when such an order is legally made the court making it has no jurisdiction to proceed further in the cause, so long at least as that order remains unrevoked. The certified copies to be forwarded to the court to which the action has been transferred are but evidence of the order of transfer and of the proceedings in the court from which the transfer has been made. There is nothing in the statute which makes the furnishing of such evidence essential to the 'jurisdiction' of the court to which the transfer is made. Just as in the matter of service of a summons or a notice of appeal, it is the fact of service rather than proof thereof that gives jurisdiction, so here it is the fact of the making of the order rather than the proof thereof that transfers jurisdiction."

In *Gardner* v. *United States* (1904), 5 Indian Territory Reports 150, 82 S. W. 704, the statute for removal required a

"full transcript of the records and proceedings in the cause including the order of removal, the petition therefor . . . ."

Not until his motion for new trial did the appellant raise the question that the transcript was insufficient because it did not contain a copy of the petition for removal. This the court said was too late.

The case of *Jenkins* v. *Commonwealth* (1915), 167 Ky. 544, 180 S. W. 961, 3 A. L. R. 1522, discloses that Kentucky has a statute applying to change of venue asked by a defendant that provides for certifying a copy of the indictment under a factual situation like that of the case at bar. It was contended that this

did not apply when the application was made by the State. Answering this contention the court said:

"But in any event the last named section points out a common sense mode of procedure for the Commonwealth in such circumstances . . . ."

The important consideration in any criminal trial is that the defendant shall be fully informed of the charge upon which he is being tried and this may be accomplished by copy as well as by the original indictment. Missouri has the statutory requirement that only copies be transmitted on change of venue. In several cases in that state contention has been made that sending the original papers instead of the copies did not give jurisdiction to the court to which they were sent. Among them are *State* v. *Rodman* (1903), 173 Mo. 681, 73 S. W. 605, and *State* v. *Morefield* (1938), 342 Mo. 1059, 119 S. W. (2d) 315. In the case last cited the court said:

"The purpose of the statute, Section 3640, Revised Statutes 1929 (Mo. Stat. Ann., 3200), in requiring a clerk to transmit a certified copy of the proceedings, in a change of venue case, to the county where the case has been transferred, is to insure the court acquiring jurisdiction and the parties to the suit that the papers are authentic. The mere fact that the clerk certified to the original papers was an irregularity not fatal to the prosecution in the new jurisdiction. Neither does such an irregularity affect the jurisdiction of the court."

One of the most illuminating cases is *J. J. Mayou, Mfg. Co.* v. *Consumers Oil & Refining Co.* (1944) [Wyo.], 146 P. (2d) 738, 151 A. L. R. 1243. It was a civil case but we can see no reason why in determination of the question of jurisdiction the same principles should not apply to civil and criminal cases. There is no sanctity or magic attaching to an original indict-

ment that makes it different from an original complaint. Each is the initial pleading and no more.

Wyoming has a statute reading:

"The jurisdiction of the court to which the change is directed is complete upon the filing of original papers and transcript in the clerk's office in that court, and the cause must be docketed and stand for trial as if it had originated in that court." § 89-1109, Wyo. Rev. Stat. 1931.

It will be noted that there is more warrant in this statute than in our own for the implication that such filing is a condition precedent to the acquisition of jurisdiction. But in this case, as in the one before us, instead of the original papers certified copies were sent. The case was tried and no objection to jurisdiction was made before the appeal. After stating the facts and distinguishing two cases the court said:

"In the recent case in *Myuskovich* v. *State*, Wyo. 141 P. (2d) 540, we discussed Section 20-433, Rev. St. 1931, reading that 'jurisdiction over proceedings to compel support is vested in the district court of the county in which the alleged father is permanently or temporarily resident,' etc. We held that the jurisdiction here mentioned did not relate to the subject matter; that statutes relating to venue are procedural merely, and may be waived. The jurisdicion in the case at bar relates to the pleadings filed in a particular court. If the pleadings had been lost copies, including the certified copies of the Clerk of Weston County, could have been substituted. 49 C. J. 658. No jurisdiction of the subject matter would be involved in such case. Neither do we think it is involved in the case at bar, and that the defendant by going to trial waived the fact that the original pleadings were not sent to Crook County. A case direct in point is *Granger* v. *Warrington*, 3 Gilman, 299, 305, 8 Ill. 299, 305, where the court said:

" 'The first assignment questions the correctness of the decision below, in refusing to dismiss the

cause in Du Page, for the reason that the original papers had not been transmitted by the clerk of the Cook Circuit Court to the Du Page Court. The statute relative to a change of venue requires that the clerk shall transmit all papers filed in the cause and appertaining or forming part of the record. But can a party who has obtained a change of venue, taken several steps in the cause, consented to a continuance, and at a subsequent term went to trial without objection, make this motion? We think not. The declaration and other pleadings and proceedings in the cause must have been before the Du Page Court in some form, as all the proceedings of the Cook Court have been sent up in the record. If only copies were transmitted by the clerk of Cook to Du Page, it only amounted to an irregularity, which was waived by the defendant below appearing in Du Page and consenting to a continuance, and subsequently to a trial without objection.'

"See also *Burrell* v. *State,* 129 Ind. 290, 28 N. E. 699."

What is said in 49 C. J. 658 (referred to *supra*) about substitution of copies for original pleadings lost or destroyed, is expressly covered by § 9-905, Burns' 1942 Replacement, which applies not only to indictments lost or destroyed but to those mislaid or stolen. Every indictment must be recorded when returned, § 9-904, and so long as the record is extant, there is a copy available. It would make no difference if the original were mislaid before or after the change of venue. Either court could substitute a copy. Jurisdiction would not be affected if the original were lost, destroyed, mislaid or stolen. Its presence does not confer nor its absence destroy jurisdiction. If without it the Boone Circuit Court had no jurisdiction, by the same token its transfer to Boone County would have deprived the Criminal

Court of Marion County of its jurisdiction to continue the trial of appellant's co-defendants. We cannot countenance a rule that would result in such an absurdity.

We conclude therefore that the Boone Circuit Court had jurisdiction and the procedural provision for transmission of the original indictment was waived by appellant's going to trial upon the copy ordered sent by the Criminal Court of Marion County. All the Indiana cases above cited in conflict with this opinion are hereby overruled.

Appellant has one further contention, namely, that the certified copy of the indictment sent to Boone county lacked the signature of the foreman of the grand jury and therefore was insufficient to confer jurisdiction. He cites in support thereof a number of cases holding that an original indictment unsigned by the foreman of the grand jury is bad on motion to quash. We have no quarrel with this rule but it is not applicable in the case at bar. It is provided by § 9-901, Burns' 1942 Replacement, that when found the indictment

"must also be indorsed by the foreman of the grand jury 'A true bill,' and he must subscribe his name thereon as foreman."

The next section states that:

"As soon as the grand jury has returned an indictment into court, the judge must examine it; and if the foreman has neglected to indorse it 'A true bill,' with his name signed thereto . . . the court must cause the foreman to indorse it . . . in the presence of the jury."

The certified copy of the indictment sent to Boone county is incorporated in the record before us and shows in-

dorsement of the words "A true bill" with a line for signature, but no signature of the foreman. The record further shows, however, an order book entry in the Criminal Court of Marion County as follows:

> "Come now the Grand Jurors of Marion County, Indiana, heretofore duly impaneled, sworn and instructed as by law provided, and return in open Court 19 bills of indictment, which are duly signed by Sherwood Blue, Prosecuting Attorney, and are each duly endorsed as true bills by James M. Atkinson, the Foreman of the Grand Jury. Said bills of indictment are now examined in open court, the amount of bail endorsed on each by the said Hon. William D. Bain, Judge, and they are now marked filed, and numbered as follows, to-wit:

"Cr. 1380   Cooper Leeon Bledsoe     "FIRST
        "Albert McCauley McBride  DEGREE
        "Kenneth Carroll"        MURDER"

Where there is a variance between parts of the record it is the duty of this Court, if it can, to determine which part of the record is accurate and must be credited. It has been said that as between a transcript of the record made by the clerk and a bill of exceptions signed by the judge, the latter will be accepted because

> "the bill of exceptions brings the facts distinctly to the attention of the judge who signs it." *State* v. *Flemons* (1855), 6 Ind. 279.

While there is no bill of exceptions here involved, we do have on the one hand a record of an order book entry, presumed to have been signed by the judge (*State* v. *Hanna* [1882], 84 Ind. 183), reciting that he examined the indictments and that they were properly indorsed by the prosecuting attorney and the foreman of the grand jury. On the other hand we have a copy of the indictment verified only as such copy by the signature of the clerk. As between the two it seems

to us that we should credit the former rather than the latter and explain the discrepancy by the neglect of the clerk to make a true copy of the indorsements on the original indictment.

Appellant does not contend that the indictment was not properly indorsed, but only that the copy fails to show the indorsement. This was within his knowledge before the trial, but it was not brought to the attention of the court until after verdict. The Boone Circuit Court, even after verdict, was not without the power to make inquiry concerning an alleged lack of indorsement on the original indictment. The order of the Criminal Court of Marion County directing that the certified copy be sent to Boone County was made December 11, 1944, and as shown therein was occasioned by the fact that appellant's co-defendants were then on trial on the original indictment. Appellant's trial in the Boone Circuit Court began February 14, 1945, and his motion for new trial was filed six days later. We see no reason why appellant, either before or after his trial, should not have raised the question in the Boone Circuit Court. In *Burrell* v. *State, supra,* appellant questioned the power of a court to which venue had been changed to order the clerk of the court from which it came to correct his transcript. It was deemed unnecessary to decide this question. In other jurisdictions this power has been recognized. See 22 C. J. S. Criminal Law, § 216 (d), p. 343. The court did say, however, as above quoted that it was the clerk's duty

"Whenever he learned in any manner that he had forwarded an imperfect transcript . . . to correct his mistake, and thus comply fully with the order made."

If contention had been made in the Boone Circuit Court that the original indictment had never been indorsed, the judge or either of the parties might have brought to the attention of the clerk of the Criminal Court of Marion County the state of the record made by him and his duty in the premises, which would have resulted in the verification or refutation of the questioned fact. If the indorsement of the foreman is an indispensable requisite of jurisdiction and if in fact the original indictment was not indorsed, appellant's counsel would justly be subject to criticism for failure to bring to the attention of the trial court that fact even after verdict. We shall not accuse them of such neglect but rather will assume that the indictment was correctly indorsed as disclosed in the order book entry and was not correctly copied through the inadvertence of the clerk.

Appellant cites a case dealing with the question of severance. There is no such question in this case for it is apparent from the record that severance had taken place prior to the time when he filed his application for change of venue.

Both of appellant's contentions, and there are no others, go not to substance but to formalities that may be and after verdict will be deemed to have been waived. The Boone Circuit Court had jurisdiction of the subject matter and of appellant's person. He was fully informed of the charges that he was required to meet. He was represented by counsel experienced in the practice of criminal law. They have not brought the evidence or instructions to this court and we must assume that the trial was without error, or at least such as might be reversible. As stated in *Robinson* v. *State* (1912), 177 Ind. 263, 97 N. E. 929:

"It would be a reproach to the law to require a judgment to be held for naught, and the State put

694

to the expense of another trial, for a defect which did not prejudice the substantial rights of appellant, and which he could have had corrected before trial if it in fact existed. This we are forbidden to do."

The judgment is affirmed.

Note.—Reported in 64 N. E. (2d) 160.