Mike A. NICHOLSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 984S352.

Supreme Court of Indiana.

Dec. 3, 1986.

Terry A. White, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Michael B. Murphy, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was charged with Attempted Murder, a Class A felony. A jury trial resulted in a conviction of Attempted Voluntary Manslaughter, a Class B felony. Appellant was sentenced to twenty (20) years imprisonment.

The facts are: In the early morning hours of November 20, 1983, appellant had consumed approximately ten beers and an unascertained amount of whiskey. At approximately 2:30 a.m. appellant and David Harger went to the apartment of Karen Miller, an acquaintance of appellant. Upon arriving at the apartment, appellant started acting in a belligerent manner and asked both Miller and Harger if they knew "who the reaper was" and stated "I am the reaper."

Appellant then asked Harger and Miller if they wanted "to go to heaven." After approximately thirty minutes, appellant went to the kitchen, found a butcher knife, and came back brandishing the knife. He again asked both Harger and Miller if they wanted to go to heaven.

At the time appellant entered the living room from the kitchen, Miller was facing Harger with her back to appellant. Appellant grabbed her from behind with his left arm and put the knife to her throat with his right hand. He again asked Miller if she wanted to go to heaven and if she wanted him to "send her there." When Miller attempted to escape appellant's grasp, she was cut on the throat by the knife, receiving a wound which required twenty stitches.

Following the wounding of Miller, Harger protested that she must go to a hospital immediately. Appellant put the knife to Harger's chest and said "you're not taking her anywhere." When Miller attempted to go to a neighbor's door, appellant grabbed her while still holding the knife and forced her to return to her own apartment. Appellant then agreed to take her to a hospital but refused to allow her to change clothes first. Still holding the knife, he took her to his car where she again escaped his grasp and returned to the apartment. She was in the process of changing clothes when appellant kicked in the door of her room, whereupon she fled with Harger and called the police from a telephone booth.

Appellant claims the trial court erred in giving its Instruction No. 13 and appellant's modified Instruction No. 1 with regard to the definitions of attempted murder and attempted voluntary manslaughter. He argues that the court failed to include in these instructions any language relating to one of the essential elements of the offense, namely, that the court omitted stating that appellant must have specific intent to murder the victim before the jury can render a verdict of either attempted murder or attempted voluntary manslaughter.

Instructions must be construed as a whole. If, when so considered, they state the law fully and correctly, the case will not be reversed. *Daniels v. State* (1980), 274 Ind. 29, 408 N.E.2d 1244. The instructions are to be read together as a whole and not as separate units. *Davidson v.*

*State* (1982), Ind., 442 N.E.2d 1076; *Wireman v. State* (1982), Ind., 432 N.E.2d 1343, *cert. denied*, 459 U.S. 992, 103 S.Ct. 350, 74 L.Ed.2d 389. A single instruction need not contain all the law applicable to the case. *Mundy v. State* (1966), 247 Ind. 224, 214 N.E.2d 389.

The court's Instruction No. 2 informed the jury of the precise language of the charge against appellant and that the State had the burden of proving each essential element beyond a reasonable doubt. The court's Instruction No. 7 specifically instructed the jury that they were not to single out any certain sentence or single instruction and ignore the others but were to consider them as a whole. The court's Instruction No. 12 gave the statutory definition of the crime of murder. Instruction No. 13 instructed the jury on the law of attempt to commit a particular crime. Instruction No. 14 instructed the jury on the meaning of "knowingly." Instruction No. 15 instructed them that if the State had failed to prove any of the essential elements charged they must find appellant not guilty. The court further instructed them concerning included offenses. The court's Instruction No. 16D instructed the jury concerning "intentional" conduct. Instruction No. 18 instructed them concerning temporary mental incapacity by reason of intoxication, as did Instruction No. 19.

■ When read as a whole, the instructions fully informed the jury as to the statutory definitions and elements of attempted murder and attempted voluntary manslaughter. In *Clemons v. State* (1981), Ind., 424 N.E.2d 113, this Court held that even though a single instruction was incomplete in setting forth the elements of intent to kill, there was no reversible error because the court in other instructions had instructed the jury on the definition of the crime of murder and the necessary element of intent.

We therefore find there is no reversible error concerning the content of the court's Instruction No. 13 and appellant's modified Instruction No. 1.

Appellant claims the trial court erred in failing to give instructions concerning what he claims are included offenses of battery and criminal recklessness. In considering lesser offenses, the court must determine from the statutes and the charging instrument whether the lesser offense is necessarily included within the greater and whether there was evidence introduced at trial to prove the lesser offense. *Johnson v. State* (1983), Ind., 455 N.E.2d 897. In *Smith v. State* (1981), Ind., 422 N.E.2d 1179, 1184, this Court stated "[t]he intent-to-kill element is the key element which distinguishes attempted murder from battery."

■ In the case at bar both the charging instrument and the evidence adduced at trial clearly set forth the element of intent to kill Miller. Appellant argues that just because he held a knife to Miller's throat is no proof that he intended to kill her. We have repeatedly refused to accept this type of argument by an appellant. We have said that a jury may infer intent to kill from the use of a deadly weapon in a manner likely to cause death or great bodily harm.

■ In the instant case appellant not only used a deadly weapon but in doing so used words which could clearly support the jury's finding that he intended to kill Miller. This evidence of intent was further enhanced by the fact that even though Miller was wounded appellant continued to interfere with her attempts to gain aid. Under the circumstances of this case, it would have been improper for the trial judge to have instructed the jury concerning either battery or criminal recklessness. *See Humes v. State* (1981), Ind., 426 N.E.2d 379.

■ Appellant claims the trial court erred in allowing the State, over his objection, to introduce photographs of the victim's neck immediately after the infliction of the injury and also in overruling his objection to the State's request to be allowed to display the victim's scar to the jury. This Court has held that when photo-

graphs are demonstrative of testimony being presented by a witness they are generally admissible. The fact that they may depict gory, revolting or inflammatory details of the crime is not a sufficient basis for excluding them. In the instant case the jury was entitled to consider the severity of the wound in weighing appellant's conduct toward the victim after the wound had been inflicted. They were certainly entitled to observe the scar on appellant's neck which resulted from the wound. We find no reversible error in the admission of the photograph or in the viewing of the victim's scar.

The trial court is affirmed.

All Justices concur.