Daniel Eugene EVANS, Appellant,

v.

STATE of Indiana, Appellee.

No. 46S00–8806–CR–00535.

Supreme Court of Indiana.

May 21, 1991.

W. Jonathan Forker, LaPorte, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant was convicted by a jury of kidnapping, a Class A felony, I.C. 35–42–3–2(a)(3), and escape, a Class C felony, I.C. 35–44–3–5. He was given the presumptive sentences of thirty years for the Class A felony and five years for the Class C felony, and the trial court ordered that the sentences be served consecutively. In this direct appeal, appellant argues that the State failed to prove venue, that his kidnapping conviction must be reversed because two final instructions were given in error and because the evidence as to that count was insufficient, and that the trial court erred in ordering that he remain in leg irons during the course of his trial.

The facts adduced at trial which tended to support the determination of guilt show that on March 1, 1987, appellant was incarcerated on the fifth floor of the LaPorte County Jail awaiting sentencing on two counts of burglary to which he had previously entered guilty pleas. During official visiting hours that evening, James Logmann, the officer on duty on the fifth floor, received notification that two visitors had arrived, one for appellant and his brother, Jimmy Evans, and one for another inmate. After summoning the three men, Logmann watched through a small window as they presented themselves at a remote-controlled, sliding security door which led to a holding area, which in turn opened onto the hallway to the visiting room. As Logmann opened the sliding door and Jimmy Evans and the other inmate entered the holding area, appellant put his face up to this window, thereby obscuring Logmann's view, and asked if Logmann was sure the visitor was for him. At that time, two other inmates, Charles Thomas and Rodney Cooper, crept into the holding area undetected by Logmann. After receiving an affirmative answer to his question, appellant entered the holding area and Logmann closed the security door.

Logmann then went to the hallway side of the holding area and opened that door, which must be manually opened with a key. The first inmate exited the holding area and apparently proceeded as anticipated to the visiting room. Then Jimmy Evans emerged and stood next to Logmann by the door. Logmann looked back toward the holding area and saw appellant standing in the doorway. Logmann then turned back around and was shoved by Jimmy Evans and pulled by appellant into the holding area. His feet were knocked out from under him and, when he hit the floor, he saw Cooper and realized what had happened. Logmann was gagged and his hands and feet were bound. After Logmann freed himself and alerted other officers, he discovered that an interior window separating the secured and unsecured portions of the fifth floor had been broken out with a typewriter. A headcount confirmed that appellant, Jimmy Evans, Cooper and

Thomas had escaped. Cooper, Thomas, and Jimmy Evans were apprehended within an hour of the escape. Appellant remained at large for eight days, then turned himself in.

## I. Venue

■ Appellant argues that his convictions cannot stand because the State failed to properly prove venue. Venue "relates to and defines the particular county or territorial area within the state or district in which the cause or prosecution must be brought or tried." *Bledsoe v. State* (1945), 223 Ind. 675, 678, 64 N.E.2d 160, 161 (quotation and citation omitted). The State must prove proper venue by a preponderance of the evidence, and circumstantial evidence may be sufficient to establish proper venue. *Gillie v. State* (1987), Ind., 512 N.E.2d 145. Therefore, it was incumbent upon the State to prove by a preponderance of the evidence that the crime charged was committed in LaPorte County, Indiana, where the trial was held.

■ Appellant maintains that there was no evidence in the record that the charged crimes took place in the State of Indiana. In pertinent fashion, there was testimony from police officers that they were employed by the LaPorte County Sheriff's Office and that the escape was made from the LaPorte County Jail, and one such officer testified that he received training for his jail service at the Indiana State Law Enforcement Academy located "[d]own at Plainfield, Indiana." This testimony and reasonable inferences from it warranted a finding that the conduct constituting these alleged offenses occurred in the State of Indiana. The State sustained its burden of proof on this issue.

## II. Validity of Kidnapping Conviction

### A. *Instructions*

■ In its final charge to the jury, the trial court gave two instructions specific to the crime of kidnapping, quoted in pertinent part as follows:

Final Instruction 9

The Statute defining the offense of Kidnapping which was in force in Indiana at the time of the offense charged, reads as follows:

"A person who knowingly or intentionally confines another person with intent to obtain the release or with intent to aid in the escape, of any person from lawful detention; commits kidnapping, a Class A Felony."

Final Instruction 11

To sustain the charge of kidnapping, the State must prove the following propositions:

First: That the defendant knowingly or intentionally confined James Logmann; and,

Second: That the defendant did so with the intent to obtain the release of any person from lawful detention; or with the intent to aid in the escape of any person from lawful detention.

These were the only final instructions given by the trial court which purported to define the burden which the State had to carry in order to prove guilt beyond a reasonable doubt on the kidnapping charge. The information upon which appellant was charged with kidnapping had been read to the jury in the court's preliminary instructions. The trial court, however, did not repeat the preliminary instructions in its final instructions, nor did it give a final instruction which incorporated the preliminary instructions or which made reference to them in any way. Therefore, the jury did not receive the factual allegations which constituted the kidnapping charge as part of its final instructions.

The information charging appellant with kidnapping read, in pertinent part, as follows:

[O]n or about the 1st day of March, 1987, in the County of LaPorte and the State of Indiana, one Daniel E. Evans ... unlawfully[ ] and knowingly confine[d] Jail Officer James Logmann by tying his hands, his feet, and by placing a gag in his mouth and with intent to obtain the release or intent to aid in the escape of

Jimmy C. Evans, Charles J. Thomas, and Rodney D. Cooper from official custody....

During the hearing at which final instructions were settled, held outside the presence of the jury, appellant lodged a timely objection and argued to the court that, based on the factual allegations in the charging instrument, the giving of Instruction 11 would not be appropriate:

[W]e've already through [Instruction 9] defined what the statute says on Kidnapping; and now we're talking, of course, in [Instruction 11] what the State has to prove, the following propositions. ... My objection to this instruction is now we're getting to the specifics of what appellant has been charged with. And by that, I mean, I object to the language of that paragraph marked, ... "Second," where it says, "any person," in two different places.... If we refer back to the information, your Honor, what [appellant] is charged with is confining James Logmann with the intent to obtain the release, or intent to aid in the escape of Rodney Cooper, Charles Thomas and Jimmy Evans. That's what the information says happened here. And this particular instruction permits the Jury to consider and permits the State to argue[,] ... "[Appellant] escaped, you can use that in the Kidnapping." He's charged with intending to aid or intending to obtain the release ... of three other people, not just any person. So what I'm saying is they're confined in their arguments; they're confined in their instructions to the Jury, that the evidence must show that it was those other three; they're not considering any escape or alleged escape on the part of [appellant] in reaching a decision in the Kidnapping charge. The State specifically drafted that information to tell us what it was they were going to prove.... [T]hey're bound by what they say happened. My concern is [that the language of Instruction 11 is] not conveying to the Jury what he's really charged with....

This objection was overruled by the trial court. Appellant argues that the final instructions given to the jury on the kidnapping charge were deficient because Final Instruction 11 allowed the jury to return a guilty verdict based on findings of fact distinct from those upon which he was charged.

The defendant in *Kelley v. State* (1936), 210 Ind. 380, 3 N.E.2d 65, was charged with conspiring with others to bomb the home of a named individual, one James Miller. The theory of the State, which was borne out by the evidence, was that this crime constituted part of a larger plan designed by a group of union miners, of which Kelley was a member, to force the closure of a non-union mine in southern Indiana by way of a series of unlawful acts. This plan, of course, was also unlawful, but was not charged. This Court set out the burden of proof which rested upon the State as follows:

[I]n order for the state to make its case, it was necessary to prove that the defendant united with another, or others, for the purpose of committing the felony described in the indictment. The defendant could not have been convicted lawfully by proof that he had united with one or more persons for the purpose of committing a felony *other than the one defined in the indictment* no matter how atrocious such other intended felony might be.

*Id.* at 385, 3 N.E.2d at 68 (emphasis added). In Instruction 20, the jury was told that it could find Kelley guilty of the charged crime, conspiracy to destroy Miller's property, if it found that Kelley was a party to the plan to close the mine by destroying property belonging to non-union miners, by injuring non-union miners, or by any other unlawful means and if it found that Miller's property had in fact been destroyed in furtherance of that plan. This Court held that instructing the jury in this manner constituted reversible error because, in view of the evidence of the "general conspiracy" to close the mine,

[i]f the jurors believed that [Kelley] had united with others to force the closing of mine No. 2 by any unlawful means ... then, under instruction 20, the jury was

relieved of the necessity of finding that [he] in fact ever united or combined with any one to commit the felony described in the indictment.

An instruction is fatally defective which directs a jury to return a verdict of guilty upon a finding of facts which may not include the essential facts of the crime charged.

*Id.* at 390–91, 3 N.E.2d at 70.

The instructions given by the trial court here were likewise fatally defective because nowhere in the final charge was it made plain to the jury, neither expressly nor by reference to the indictment which had been read as part of the preliminary instructions, that a verdict of guilty could be predicated only on a finding that appellant committed the specific acts charged in the indictment and not on a finding that he had committed other acts, even if criminal, which were not charged. Instruction 11 purported to set out the facts which the State had to prove to obtain a conviction and, in so doing, informed the jury that it could convict if it found that appellant acted to obtain the release or aid in the escape of any person, rather than that he acted with the intent to obtain the release or aid in the escape of the three individuals specifically named in the charging information. As in *Kelley*, this constitutes reversible error.

This conclusion also finds support in our recent case of *Kelly v. State* (1989), Ind., 535 N.E.2d 140, where this Court reversed a conviction for criminal confinement and remanded for a new trial based on an erroneous instruction. The defendant there was charged with criminal confinement in that he "confine[d] [the victim] without his consent and while armed with a deadly weapon," and in its final instructions, the trial court informed the jury that it could find the defendant guilty of confinement if the State proved beyond a reasonable doubt that he had either confined the victim or removed the victim from one place to another by fraud, enticement, force, or threat of force. *Id.* at 142. This Court stated, "The jury's general verdict indicate[d] that they did find the defendant

guilty of confinement, but [did] not indicate whether the conviction was based on a violation of Ind.Code 35–42–3–3(a)(1), non-consensual confinement, as charged in the information, or Ind.Code 35–42–3–3(a)(2), confinement by removal, as allowed by the instructions but not charged by information." *Id.*

Here, appellant was charged with confining a jail official with the intent to aid in the escape of three named individuals, none of whom was himself, yet the jury was instructed that it could return a guilty verdict upon a finding that he had acted to aid in the escape of any person, which would include his own. As in *Kelly*, we cannot divine from the general verdict rendered here whether the jury based its determination of guilt on the crime charged in the information or on a crime allowed by the instructions, but not charged in the information. Therefore, a new trial is required, at which the jury is instructed that to find appellant guilty of the crime charged, they must find that he acted with the intent to obtain the release of or aid in the escape of Jimmy Evans, Cooper, and Thomas.

■ This Court has stated that an instruction which purports to set out the complete burden of the prosecution "is an instruction, which when given at trial, creates a moment of focus and special attention. The judge takes special care in reading it loudly and distinctly. The jury perceives its special and crucial character." *Abdul–Wadood v. State* (1988), Ind., 521 N.E.2d 1299, 1300. *See also Duling v. State* (1976), 170 Ind.App. 607, 614, 354 N.E.2d 286, 292 ("When the court undertakes to state all the facts to be proved in one instruction, the jury is led to believe that to find the defendant guilty, no other evidence need be considered."). An error in such an instruction creates a serious risk of wrongful conviction, *Abdul–Wadood*, 521 N.E.2d at 1300, and this Court has repeatedly held that an instruction purporting to set out the State's entire burden of proof but which omits an essential element is fatally defective and necessitates a reversal and a new trial on the charge before a properly instructed jury, *id.; Kelly*, 535

N.E.2d 140; *Smith v. State* (1984), Ind., 459 N.E.2d 355; *Kelley,* 210 Ind. 380, 3 N.E.2d 65.

In *Nicholson v. State* (1986), Ind., 500 N.E.2d 1175, the defendant argued that a reversal of his conviction for attempted voluntary manslaughter was required because an essential element, namely, specific intent, was omitted from the trial court's instructions on the definitions of the charged crime of attempted murder and the lesser included offense of attempted voluntary manslaughter. This Court rejected this argument because the trial court's final instructions, taken as a whole, fully instructed the jury on all essential elements. The body of the court's final instructions informed the jury of the precise language of the charge, stated that the State bore the burden to prove every essential element of the charge beyond a reasonable doubt, gave the statutory definitions of the relevant crimes, and explained the meanings of the states of mind known as "intentional" and "knowingly." *Id.; see also Clemons v. State* (1981), Ind., 424 N.E.2d 113. The case at bar is distinguishable from *Nicholson* and other cases with like holdings because the essential element omitted from the final instructions here, namely, that to sustain its burden of proof the State was required to prove beyond a reasonable doubt that appellant acted with the intent to obtain the release or aid in the escape of Jimmy Evans, Thomas and Cooper, as charged in the information, appeared nowhere in the final instructions given to the jury, neither expressly nor by incorporation of or reference to the preliminary instructions. Appellant's conviction on the kidnapping charge must therefore be reversed and remanded for a new trial.

■■■ Because the issue could arise upon retrial, we proceed to address appellant's argument that Final Instruction 18 was also given in error. The trial court gave the following instruction on accomplice liability as its Final Instruction 18:

When one or more individuals combine to commit an offense, each is responsible for the acts committed in furtherance of their common design.

The test for reviewing the propriety of a trial court's decision to give or refuse tendered instructions is 1) whether the instruction correctly states the law; 2) whether there was evidence in the record to support the giving of the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions which are given. *Coates v. State* (1989), Ind., 534 N.E.2d 1087. Appellant does not argue that Final Instruction 18 was an incorrect statement of the law, but instead maintains that there was insufficient evidence to support the giving of this instruction. On cross-examination, Logmann conceded that, because he was face-down on the floor at the time he was being bound, he was unable to see who had actually tied his hands and feet, and appellant argues that therefore, "there was no evidence of the identity of the person or persons with whom [appellant] allegedly 'combined' to commit kidnapping, or that [appellant] was acting with confederates in pursuit of a common design."

A similar argument was offered by the defendant and rejected by this Court in *Underhill v. State* (1981), Ind., 428 N.E.2d 759. In *Underhill,* the defendant and his uncle escaped from the Posey County Jail. They effected their escape when a jailer opened their cell door and the uncle wrenched the door from his hands and forced him to retreat by swinging a steel bar at him. In response to the defendant's argument that the trial court erred in instructing the jury on confederate liability because there was no evidence that he had acted in concert with his uncle, this Court stated:

[While] mere presence at the scene of a crime is not sufficient to prove participation in a crime[,].... presence at the scene is one factor which the jury may consider in assessing a defendant's conduct, together with a failure to oppose a crime, companionship with one engaged therein, and a course of conduct before, during, and after an offense which tends to indicate complicity. Proof may occur by either direct or circumstantial evidence.

*Id.* at 766 (citation omitted). Ample evidence was produced at trial here to support the giving of Instruction 18. There was direct evidence that appellant participated with the others in the assault on Logmann and the escape provided by Logmann's testimony that appellant pulled him into the holding area as Jimmy Evans pushed him in. Further, appellant's positioning of himself in front of Logmann's window, which allowed Cooper and Thomas to enter the holding area undetected, and the fact that he did actually escape with the others provided circumstantial evidence that appellant combined with the others to subdue Logmann and effect the escape. This circumstantial evidence also supports the trial court's decision to give the instruction on accomplice liability. There was no error in giving Instruction 18.

### B. Sufficiency of the Evidence

■ Before this Court can remand the kidnapping charge for a new trial, based on our finding that the trial court committed reversible error in giving its Final Instruction 11, we must determine whether such a remand would offend the Double Jeopardy Clause of the federal Constitution by addressing appellant's contention that the evidence was insufficient to support his conviction on that crime as charged. *Kelly,* 535 N.E.2d at 143.

Appellant first challenges the sufficiency of the evidence by reiterating his argument that the evidence did not support the trial court's decision to give Final Instruction 18, i.e., that there was no evidence that he confined Logmann or that he acted in concert with others to do so. He further argues that the evidence is insufficient that he acted with the intent to aid in the escape of his brother, Cooper and Thomas. These arguments are unavailing. The same circumstantial evidence of appellant's participation in the kidnapping which has been found sufficient for the purpose of determining the propriety of instruction 18 is likewise sufficient to prove beyond a reasonable doubt that appellant committed the acts charged. Likewise, intent may be proved by circumstantial evidence, *White v. State* (1986), Ind., 495 N.E.2d 725, and the evidence recited above is more than adequate to show that appellant intended to aid the other three inmates by his actions.

Appellant also argues that the State failed to sustain its burden of proof on one of the elements of the crime charged, namely, that he confined James Logmann with the intent to secure the release or aid in the escape of persons in lawful detention. Appellant maintains that there was no proof that his brother, Cooper and Thomas were in lawful detention in the LaPorte County Jail, which the State must prove beyond a reasonable doubt to obtain a conviction for kidnapping under I.C. 35–42–3–2(a)(3). *Pine v. State* (1980), 274 Ind. 78, 408 N.E.2d 1271.

When reviewing the sufficiency of the evidence, this Court will neither reweigh the evidence nor judge the credibility of the witnesses, but will affirm the conviction if the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom provide probative evidence from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *James v. State* (1976), 265 Ind. 384, 354 N.E.2d 236. Elements of offenses may be established entirely by circumstantial evidence and the logical inferences to be drawn therefrom. *Bustamante v. State* (1990), 557 N.E.2d 1313 (citing *McVey v. State* (1988), Ind., 531 N.E.2d 458).

Appellant stipulated that he was in lawful detention in the LaPorte County Jail on March 1, 1987, and that stipulation was read to the jury. All of the jail officials who testified at trial referred to appellant as an inmate of the LaPorte County Jail, and they referred to Jimmy Evans, Cooper and Thomas in the same manner. At the beginning of this episode, the three men whom appellant was charged with helping to liberate were in the same secured section of the fifth floor as was appellant. Jimmy Evans responded to the call that he had a visitor just as appellant did and followed the standard procedure by which those in the lawful custody of the LaPorte County Jail avail themselves of contact

with society. In order to gain access to a less restrictive area of the jail, namely, the hallway leading to the visiting room, Cooper and Thomas first had to rely on appellant to block Logmann's view of their approach and to divert his attention as they crawled into the holding area, then on appellant and his brother to at least initiate the neutralization of the jail guard. All four men then had to break out and climb through an interior office window in order to reach the unsecured part of the jail, which led to the public elevator and ultimately to the outside. In other words, the evidence was that the jailers considered and treated Jimmy Evans, Cooper and Thomas in the same manner as one stipulated to be in lawful detention, and that the behavior of those three men was the same as one stipulated to be in lawful detention. From this circumstantial evidence, a reasonable jury could find beyond a reasonable doubt that Jimmy Evans, Cooper and Thomas, like appellant, were in lawful detention at the LaPorte County Jail at the time the alleged kidnapping took place.

The evidence was sufficient to support the conviction for the crime of which appellant was actually charged, and therefore double jeopardy does not bar a retrial on that count.

### III. Use of Shackles

■ Immediately prior to the commencement of the trial, appellant moved that he be freed of his leg irons while in the presence of the jury. The trial court conducted a hearing at which LaPorte County Sheriff Kenneth Layton testified that he had received information through official channels that appellant was planning to make an escape attempt during the trial. Sheriff Layton's testimony disclosed that appellant was held at Pendleton while awaiting trial on the instant charges and that an informant there told a Department of Corrections investigator that appellant might attempt to escape from his trial. This information was relayed from the investigator to Sheriff Layton through one of Layton's sergeants. The court denied appellant's motion and then ordered that wastebaskets be strategically placed so as to block the jury's view of appellant's feet. Appellant argues that the court's ruling that he remain in leg shackles was based on insufficient credible evidence, as the source of Layton's information was a confidential informant who was never identified and whose credibility therefore could not be determined, and that therefore the order was made for mere convenience, which this Court has ruled is an impermissible basis on which to permit a jury to see a defendant restrained. *Walker v. State* (1980), 274 Ind. 224, 410 N.E.2d 1190.

First, appellant's situation is distinguishable from that presented in *Walker.* There, the defendants had been free of any kind of restraint while their trial was being conducted. At the close of one day's proceedings, they were taken out of the sight of the jury and put in handcuffs and leg irons in preparation for their trip from the courthouse to the jail. The court then decided to recess the jury over a long weekend and had the defendants brought back in, still shackled, to be present while the jury was admonished before being dismissed. This Court stated that bringing the defendants back in restrained as they were "was mere convenience due to the late hour of the day" and that this was not a sufficient ground for departing from established standards. *Id.* at 229, 410 N.E.2d at 1194. The general rule is that a criminal defendant is not to appear before the jury in bonds or shackles; however, certain exceptions exist which permit the trial court to use its discretion to have the defendant restrained when necessary to prevent his escape, to protect those present in the courtroom, and to maintain order during the trial. *Id.* at 229, 410 N.E.2d at 1193. The court's decision here to keep appellant restrained was clearly to prevent his escape and was not merely for convenience.

Further, a review of the record shows that the trial court's denial of appellant's motion was not an abuse of discretion. This Court has held that the nature of the offense for which a defendant is being tried is relevant to its decision whether, to what extent, and by what means to restrain the defendant. *Lucas v. State* (1986), Ind., 499 N.E.2d 1090 (escape); *Jessup v. State*

(1971), 256 Ind. 409, 269 N.E.2d 374 (assault on a prison official). Here, appellant was charged with escape, and he had effected that escape by precipitating a direct, physical confrontation with a jail officer. Appellant also acted in conjunction with other inmates in the perpetration of his crime, which increased the risk of harm to the jailer or others who might try to intervene. The trial court here was warranted in taking precautionary measures based on a tip, albeit an anonymous one, to prevent the possibility of appellant's escape or harm coming to court personnel or spectators in the courtroom.

Finally, the court took affirmative measures to eliminate or minimize the possibility that the jurors would see appellant's feet, and appellant makes no argument that the court's efforts to hide the leg irons from the jury's view were unsuccessful. Measures taken by a trial court to prevent the jury from seeing that a defendant is restrained and to interdict any prejudice that might otherwise result have, in other cases, been considered by this Court as a factor indicating that the court was acting within its discretion. *See Lucas,* 499 N.E.2d 1090; *Smith v. State* (1985), Ind., 475 N.E.2d 27. Likewise, here, we find that the trial court was justified in its decision to have appellant restrained during court proceedings and that it took what measures it could to ensure that he received a fair trial nonetheless.

Appellant's conviction on the escape charge is affirmed. His conviction on the charge of kidnapping is reversed and remanded for a new trial.

DICKSON and KRAHULIK, JJ., concur.

SHEPARD, C.J., dissents.

GIVAN, J., dissents with separate opinion in which SHEPARD, C.J., joins.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in its reversal of appellant's kidnapping conviction.

Citing the case of *Kelley v. State* (1936), 210 Ind. 380, 3 N.E.2d 65, the majority takes the position that because the trial court did not repeat its preliminary instructions as a part of its final instructions, the jury was neither expressly nor by reference informed that their verdict could be predicated only on a finding that appellant had committed the specific acts charged. I do not find the *Kelley* case to be dispositive of the issues in this case.

In the case at bar, the charging information set out in the majority opinion charges appellant with the intent to aid in the escape of Jimmy C. Evans, Charles J. Thomas, and Rodney D. Cooper. As the facts set out in the majority opinion clearly show, appellant in fact did effect the escape of Evans, Thomas, and Cooper.

In *Kelley,* the defendant was charged with conspiring with others to bomb the home of a named individual. However, the State's theory of the case was that he was a part of a union group whose purpose it was to force the closure of a non-union mine in southern Indiana by way of a series of unlawful acts. There, this Court correctly pointed out that you cannot charge one specific offense and then find the defendant guilty by showing that he committed similar offenses.

In the case at bar, there is no conceivable way the jury could have been confused. There was no variance at any time in the State's theory of the case, and the facts did support the charge.

I would affirm the trial court in its entirety.

SHEPARD, C.J., concurs.