NORMAN E. RAYMER *v.* STATE OF INDIANA

[No. 177A138. Filed October 10, 1978.]

*Stephen R. Lewis*, of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J. — Defendant-appellant Norman E. Raymer appeals from his conviction by a jury of burglary in the first degree.

We affirm.

## FACTS

The evidence most favorable to the State shows that Raymer and Michael Witt stopped at the residence of Charles Sidlinger on the morning of March 30, 1976. When no one answered their knock at the door, they opened the door of the attached garage and went into the garage. Their efforts were interrupted when a neighbor, Wayne Drake, came to investigate. Raymer and Witt sped away when Drake commenced questioning them. Drake followed them and obtained the license number of the automobile.

At Raymer's trial, Witt testified in detail concerning the presence of Raymer and Witt at the Sidlinger home and their activities earlier and later that same day. Tammy Whitaker, with whom Raymer allegedly lived at the time of the burglary, gave testimony which tended to support Witt's statements and also rebutted parts of Raymer's testimony.

## ISSUES

Raymer lists five issues:

1.  Is there sufficient evidence to prove Raymer's participation in the burglary?

2.  Did the trial court admit hearsay testimony?

3.  Did the trial court err in denying Raymer's motions for mistrial?

4.  Did the trial court err in deleting a portion of Raymer's tendered instruction before reading it to the jury?

5.  Did the trial court err in denying Raymer's motion for discharge?

*Issue One*

Raymer argues that the State presented insufficient evidence to prove Raymer's participation in the burglary. In his brief Raymer makes the statement, "There was no credible evidence that the Defendant-Appellant [Raymer] committed the crime of First Degree Burglary unless we accept as true the version offered by [Witt]."

Credibility of witnesses is a matter to be determined by the jury. *Martin v. State* (1974), 262 Ind. 232, 314 N.E.2d 60.

A defendant may be found guilty solely on evidence provided by a confessed accomplice. *Coleman v. State* (1975), 264 Ind. 64, 339 N.E.2d 51; *Newman v. State* (1975), 263 Ind. 569, 334 N.E.2d 684.

In the case at bar, the jury properly could have accepted as true the testimony provided by Witt. As Raymer acknowledges in his brief, that evidence is sufficient to sustain the conviction. Furthermore, testimony given by Whitaker also favors the verdict returned by the jury. Raymer's conviction is supported by sufficient evidence.[1]

Raymer argues that the failure of the State to introduce into evidence property allegedly stolen during the burglary should have caused the trial court to strike from the record all testimony relative to the property. He cites *Keiton v. State* (1968), 250 Ind. 294, 235 N.E.2d 695 in support of his argument.

In *Pulliam v. State* (1976), 264 Ind. 381, 390, 345 N.E.2d 229, our Supreme Court wrote:

". . . There is no law to support the proposition that a failure to introduce into evidence a physical object about which there has been testimony is fatal and that all testimony regarding the physical object must go out. To the extent that this case [*Keiton v. State*] holds that the object of a theft creates an insufficiency of the evidence and is a fatal defect, it is overruled.

\* \* \*" (Our insertion).

---

1.  Raymer briefly argues that the State failed to prove venue. The evidence shows that the offense occurred one mile west of Boggstown Road at a home on R.R. 3, Shelbyville, and the Sheriff of Shelby County investigated. This evidence is sufficient to establish venue. See *Orman v. State* (1975), 165 Ind.App. 531, 332 N.E.2d 818.

Raymer's argument is answered by this holding in *Pulliam*.

The State also points out correctly that a conviction for burglary does not require proof of theft. It requires only proof of an *intent* to commit a felony. IC 1971, 35-13-4-4 (Burns Supp. 1977).

*Issue Two*

Raymer argues that the trial court erroneously admitted hearsay evidence from three witnesses.

> In *Wells v. State* (1970), 254 Ind. 608, 614, 261 N.E.2d 865, our Supreme Court included the following definition of hearsay evidence:

" 'Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' (McCormack, Evidence § 225)"

Raymer argues that witness Michael Witt gave hearsay testimony. He cites pages 207 and 208 of the record, on which pages appears the following testimony preceding the objection:

> "Q. At the time that you were arrested, did you have conversation with Sheriff Murnan?
>
> A. Uh, at the time I was arrested?
>
> Q. Un-huh.
>
> A. Yes, I did.
>
> Q. Do you recall what you told him at that time?
>
> A. Uh, no, not in particular, I don't. I think I might — I might have said —
>
> > MR. SNYDER: I'm going to object to anything being said because it was said outside the presence of this Defendant."

Witt could testify concerning his own assertions, because Witt was in court and was subject to cross-examination. Witt was allowed to testify concerning his conversation with Sheriff Murnan: "I mentioned that Norman was with me." The trial court did not err.

Raymer argues that witnesses Sheriff Murnan and Detective Brooke Appleby gave hearsay testimony. Both testified that they commenced investigating Raymer's participation in the burglary as a result of conversations with Witt. Raymer refers to this testimony as "the product of hearsay."

In general, hearsay testimony which law enforcement officers rely upon in advancing their investigations is not evidence to be used in the trial of a criminal case. *Glover v. State* (1969), 253 Ind. 121, 251 N.E.2d 814.

Witt already had testified that he informed Sheriff Murnan of Raymer's participation. Murnan, Appleby, and Witt were in court and were subject to cross-examination. The trial court did not commit reversible error in admitting the testimony to which Raymer objected. See *Flewallen v. State* (1977), 267 Ind. 90, 368 N.E.2d 239; *Patterson v. State* (1976), 263 Ind. 55, 324 N.E.2d 482.

*Issue Three*

Although Raymer summarily argues that the trial court erred in denying his motions for mistrial, his Issue Three incorporates a potpourri of arguments.

Raymer argues that the trial court erred in allowing the State to call two witnesses, Whitaker and Chambers, who were not listed in the State's response during pre-trial discovery.

Raymer's proper remedy was to seek a continuance. *Siblish v. State* (1975), 263 Ind. 651, 336 N.E.2d 650; *Luckett v. State* (1972), 259 Ind. 174, 284 N.E.2d 738; *Dorsey v. State* (1976), 171 Ind.App. 408, 357 N.E.2d 280. Having failed to seek a continuance, Raymer has waived any error. *Siblish v. State, supra.*

Raymer argues that the trial court erred in permitting the State to present evidence in rebuttal which the State should have presented in its case in chief.

This court stated in *Trinkle v. State* (1972), 153 Ind.App. 524, 529-30, 288 N.E.2d 165:

". . . it is within the sound discretion of the trial court to permit

a witness to testify during rebuttal regarding a matter which is not in rebuttal but is related to the State's case in chief, and the irregularity in so doing will not be treated as reversible error unless the defendant was prevented from presenting rebuttal evidence thereto. *Griffith v. State* (1959), 239 Ind. 321, 157 N.E.2d 191; *Hollowell v. State* (1971), 256 Ind. 467, 269 N.E.2d 755.

\* \* \*"

Raymer did present additional evidence after the State's witnesses testified during rebuttal. We do not find reversible error.

Additionally, Raymer had testified that (1) he spent no time with his alleged accomplice, Michael Witt, on the day of the burglary, and (2) he (Raymer) was living with his parents on the date of the burglary. Whitaker's testimony rebutted that of Raymer.

Raymer argues that the State purposely misled the trial court in order to persuade the trial court to admit the testimony of witness Whitaker during rebuttal.

The State told the trial court that it had no address for Whitaker until Raymer revealed the address during his testimony. In conjunction with the motion to correct errors, Raymer filed an affidavit averring that the State did have the information;[2] the State filed affidavits denying the averments in Raymer's affidavit.

On appeal this court can only review the record; we cannot determine issues of fact. Because of our prior holdings concerning the testimony of Whitaker, we conclude that reversible error did not occur, for Raymer has failed to show prejudice caused him as a result of the order in which the trial court received the evidence.

Raymer argues that the trial court erred in requiring him to answer during cross-examination: "Did your assault and battery charge in 1976 have any connection with Tammy Whitaker?"

Although the State could not have inquired concerning Raymer's prior conviction for assault and battery, Raymer introduced the topic during direct examination:

---

2. We note that the address which Raymer gave for Whitaker at trial does not agree with the address which Raymer contends was within the knowledge of the State.

Q. Okay. Have you been arrested and convicted of anything else?

A. Yes, sir, I have.

Q. For what?

A. In 1976 I was arrested on assault and battery charge.

Q. Were you convicted of that charge?

A. Yes, sir, I was.

Q. Did you plead guilty to that charge?

A. Yes, sir, I did.

Q. Why?

A. 'Cause I was guilty.

The burglary occurred March 30, 1976. Witt testified that during the week preceding March 30, 1976, Raymer and Whitaker stayed at his apartment. Raymer denied having stayed at Witt's apartment. During cross-examination Raymer was asked whether he had ever been to Witt's apartment with Whitaker:

A. No, sir, I haven't.

Q. When was the last time you saw Tammy?

A. The last time? I can't really sit here and say 'cause I don't know. It's been a long time.

Q. Did your assault and battery charge in 1976 have any connection with Tammy Whitaker?

A. Yes.

Defense counsel then objected and his objection was overruled. When Raymer was asked the question again, he testified:

A. Yes, sir, it did.

Q. And when was that charge?

A. In September 1976.

In *Pulliam v. State, supra,* and numerous other cases our Supreme Court has noted that the scope and extent of cross-examination are within the sound discretion of the trial court. Raymer already had revealed the arrest and conviction for assault and battery. Because of the limited extent of the inquiry and because of

the relevancy of the evidence to the factual issues we find no abuse of discretion in permitting the cross-examination.

Raymer argues that the trial court erred in admitting into evidence an employment application.

Raymer testified that he lived with his parents at the time of the burglary, and that he worked at Caito Foods from February until May of 1976. The trial court admitted into evidence the employment application which Raymer had completed for Caito Foods. That application listed Whitaker's address as Raymer's address. No date was on the application, however. The keeper of the records for Caito Foods testified that she did not know when the application was completed, but she presumed it had been completed in 1976.

The possible deficiency of the evidence was made abundantly clear to the jury, and the jury could give the evidence whatever weight it deemed appropriate. Raymer took the stand and explained the reason for his listing Whitaker's address. Both sides presented testimony from several persons regarding Raymer's residence. We believe the jury was fully capable of weighing that evidence and reaching a sound conclusion. We do not find reversible error.

*Issue Four*

Raymer argues that the trial court erred when it deleted the final sentence before reading the following instruction tendered by Raymer:

> "An alleged accomplice has testified against the defendant in this trial and in determining the credibility of the alleged accomplice and the weight to be attached to his testimony you may consider the leniency if any the State of Indiana has extended to him. *While it may not be conclusively presumed that because of inducements offered to the alleged accomplice by the State of Indiana that his testimony is false, it is, however, highly suspect.*" (Our emphasis)

Raymer contends that the final sentence should have been included because it is a proper statement of the law. He cites *Newman v. State, supra,* in support of his argument.

In *Newman,* at 334 N.E.2d 684, 686-87, appears the following statement:

> "An accomplice who turns 'state's evidence' and agrees to

'cooperate' with the State in consideration of leniency or the dismissal of charges by the State, to be realistic, is being bribed, regardless of the fact that public policy has approved such action in the interest of effective law enforcement. It does not necessarily follow that because of inducements offered to the accomplice his testimony is false. It is, however, highly suspect. Because of the pressure of such undue influence upon the witness in such cases the jury should have the evidence relating thereto. Such type of influence naturally impairs the credibility of such a witness.

. . . Because human nature would tend to cause accomplices to 'unload' against their partners and desire to clear themselves as much as possible of blame for a crime, such testimony should be highly scrutinized by the jury or fact finder. Such fact finding body should have before it all the relevant circumstances that caused or induced such witness to testify, including the rewards for such testimony."

The Supreme Court, in *Newman*, recognized the need for the jury to be provided all of the "relevant circumstances" influencing a witness so that the jury could then assess the credibility of the witness. Raymer introduced into evidence an agreement signed by Witt which set forth the terms of shock probation. Included in that agreement was a promise by Witt to "tell the truth about the incident from which this charge arose whenever and wherever requested." This exhibit, in conjunction with the testimony concerning Witt's cooperation with the State, duly informed the jury of the situation and allowed the jury to assess Witt's credibility, applying the general guidelines set forth in other instructions given by the trial court.

That part of the instruction which was stricken by the trial court informed the jury that certain evidence was suspect, and it invaded the jury's right to weigh and consider the evidence of an accomplice. It is the sole right of the jury to weigh all of the evidence. Therefore, the trial court correctly submitted the instruction as given.

*Issue Five*

Raymer argues that the trial court erred when it denied his Motion for Discharge.

Raymer filed a motion for early trial, pursuant to Ind. Rules of Pro-

cedure, Criminal Rule 4(B):

"(B)(1)   If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy [70] calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy [70] calendar days because of the congestion of the court calendar. Provided, however, That in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule."

The portion of CR. 4(A) which (B) incorporates by reference reads as follows:

". . . the prosecuting attorney shall make such statement in a motion for continuance not later than ten [10] days prior to the date set for trial, or if such motion is filed less than ten [10] days prior to trial, the prosecuting attorney shall show additionally that the delay in filing the motion was not the fault of the prosecutor. . . ."

Raymer's trial was scheduled for January 17, 1977. On January 13, however, the prosecuting attorney telephoned the special judge and requested a continuance until January 24, which the special judge granted. The delay in Raymer's trial was occasioned by heavy snow and sub-zero temperatures. The adverse weather had prevented jurors from reaching the courthouse so that a criminal trial then in progress could be completed on time. Because completion of the preceding case, *State v. Jones*, was postponed, the start of Raymer's trial also was postponed.

Raymer argues that he should have been discharged because the State did not comply with CR. 4(B) in seeking a continuance.

In *Harris v. State* (1971), 256 Ind. 464, 466, 269 N.E.2d 537, Justice Hunter explained that the purpose of CR. 4(A) is to guarantee a defendant's right to speedy trial, and that the rule recognizes a congested trial docket as an excuse for delay in holding a trial. In *Harris* our Supreme Court held that "[w]hether the trial judge *or* the prosecutor makes the motion would seem irrelevant when considered in light of the rule's objective and the right sought to be protected."

In the case at bar we find no prejudice accruing to Raymer. The record

reveals that the State sought a continuance as soon as it learned that the court's calendar dictated continuance of Raymer's trial. The record also reveals that the State's decision to seek the continuance by telephone was dictated by the adverse weather conditions and by the fact that a special judge was hearing the case rather than the judge who usually presides over trials held in the Shelby Superior Court. These exceptional circumstances, in conjunction with the short length of delay in holding Raymer's trial, lead to the singular conclusion that the trial court correctly denied Raymer's motion for discharge.

This court has carefully considered each issue preserved for review by inclusion in the motion to correct errors. Because Raymer has failed to show reversible error committed by the trial court, we affirm the judgment.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 381 N.E.2d 109.