Edward Lee UNDERHILL, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 181S17.

Supreme Court of Indiana.

Dec. 3, 1981.

Robert L. Bartelt, Jr., Charles L. Berger, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Edward Lee Underhill, was convicted by a jury of escape while armed with a deadly weapon, a class C felony, Ind.Code § 35–44–3–5 (Burns 1979 Repl.), and of being an habitual offender, Ind.Code § 35–50–2–8 (Burns 1979 Repl.). He was sentenced to the Indiana Department of Correction for consecutive terms of eight and thirty years. In his direct appeal, he raises the following issues for our review:

1. Whether the trial court erred when it overruled defendant's motion for a change of venue based on pretrial publicity;

2. Whether the trial court erred when it failed to conduct a hearing on defendant's motion for a change of judge;

3. Whether the trial court erred when it refused to appoint local counsel to aid in jury selection following the publicity defendant's case had received.

4. Whether the trial court erred when it permitted the state to introduce evidence of other crimes with which defendant had been charged;

5. Whether the trial court erred when it permitted the state to introduce a written report of the jail escape as substantive evidence;

6. Whether the trial court erred in giving and refusing various instructions;

7. Whether the trial court erred when it permitted expert testimony without proper foundation;

8. Whether the trial court erred when it refused to appoint a psychologist to examine defendant;

9. Whether defendant was denied a fair trial by virtue of the state's reference to the lack of psychological evidence;

10. Whether the trial court erred when it admitted state's exhibits without proper certification or authentication;

11. Whether defendant was entitled to withdrawal of the habitual criminal charge by virtue of the state's misstatement of law during final argument;

12. Whether the evidence was insufficient to establish defendant's identity as the perpetrator of the two prior felonies;

13. Whether a conviction for theft entered pursuant to a plea of guilt eleven and one-half years previous may be considered as a basis for an habitual criminal finding;

14. Whether a conviction for theft of property with a value less than $100 can be considered as a basis for an habitual criminal finding;

15. Whether the trial court erred in refusing to inform the jury of the penalty which would attach upon a finding defendant was an habitual offender; and

16. Whether the thirty-eight year sentence was manifestly unreasonable in light of the "peculiar facts of this case."

The record reveals that on December 30, 1978, defendant and Michael Wayne Evans fled the confines of the Posey County Jail, where the two men had been incarcerated. According to the jailer, William Cross, the breakout occurred when Evans forced the cell block door from Cross's hands and swung a steel bar at him. As Cross retreated, the two made their escape. Both men were subsequently apprehended.

I.

Prior to trial, defendant filed a verified motion for change of venue from Posey County based on the publicity which had been accorded the jailbreak by local news media. The trial court deferred ruling on

the motion until the jury had been selected. After *voir dire* and selection of the jury, the court held a hearing on the motion, wherein defendant presented various clippings from the local newspaper in which defendant's escape and subsequent apprehension had been reported. The court then denied the motion.

Defendant contends the court erred in denying his motion for a change of venue. In support of his contention, he points to the newspaper coverage, as well as the fact *voir dire* revealed eighteen of the prospective jurors had read about defendant, his escape, or other unrelated charges pending against him.

■ The grant or denial of a motion for a change of venue is governed by Ind.Code § 35–1–25–1 *et seq.* (Burns 1979 Repl.), Ind.R.Crim.P. 12, and the constitutional right to trial before an impartial jury. Ind. Const.Art. 1, § 13; U.S.Const.Amend. 14. The question whether a change of venue is warranted lies within the sound discretion of the trial court; the burden rests with the movant to establish either the high probability or existence of such widespread bias in the community that an impartial jury cannot be obtained. *Irvin v. Dowd*, (1961) 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751; *Haybron v. State*, (1979) Ind., 396 N.E.2d 891.

■ Here, the record reveals each juror selected swore that he or she could be fair and impartial. Only one of the selected jurors indicated she could remember reading anything about defendant or his escape; she stated she could not remember any details and had not formed an opinion about defendant or the charges pending against him. In the face of these circumstances, it cannot be said the trial court abused its discretion in denying the requested change of venue; the guarantee of an impartial jury was apparently fulfilled. *Haybron v. State, supra; Mendez v. State*, (1977) 267 Ind. 67, 367 N.E.2d 1081.

## II.

Defendant contends the trial court erred when it failed to conduct a hearing on his motion for a change of judge. The record reveals that in the course of the proceedings below, two motions—one oral and one written—were placed before the court.

The first request for a change of judge occurred approximately three months prior to trial, at a hearing wherein defendant also requested that his attorney be removed from his case. The defendant, under oath, addressed the court and offered the following reason for his motion for a change of judge:

"And Your Honor, at this time I would request that you also remove yourself as Judge on this case on the grounds that Your Honor has been over this case since September of 1978, and at this time I believe that Your Honor has too much knowledge of this case and has heard too much about my past record, and I believe that since Your Honor has knowledge of this case and my record, that Your Honor cannot at this time be fair and a non partial Judge on my behalf."

In response to the court's question whether he wished to introduce any evidence in support of his motion, defendant replied, "I don't have any." The court then overruled the motion.

Approximately three months later, defendant renewed his request, tendering an unverified but written motion for change of judge. The motion was based on the alleged prejudice to defendant by virtue of the fact the trial judge had read a presentence report prepared in anticipation of a guilty plea by defendant. The trial court denied the motion without conducting a hearing.

■ Defendant's claim of error rests on the fact the trial court did not hold a hearing on his second motion for a change of judge. That motion, however, was not verified; consequently, there was no error in the court's failure to hold a hearing. *Hanrahan v. State*, (1968) 251 Ind. 325, 241 N.E.2d 143; *Bradberry v. State*, (1974) 160 Ind.App. 202, 311 N.E.2d 437. Following the first motion, which defendant tendered in court while under oath, he was accorded

the opportunity to present evidence but tendered none.

▮ Defendant argues the fact the original motion was made under oath supplied the verification missing from his second motion. We note our rules contemplate the motion should properly be filed in written form. Whether the first motion was tendered in proper form matters not, however. Each motion stood on independent bases and so, as our courts have recognized, rose or fell on their individual form and merits. *Bradberry v. State, supra.* The trial court did not take the first motion under advisement, but rather denied it. There was no error here.

### III.

Prior to trial, defendant filed a "Petition for Appointment of Local Counsel." Defendant's court-appointed attorney resided in an adjacent county; due to the publicity defendant's escape had received in Posey County, the assistance of an attorney from that jurisdiction was sought for the jury selection process. The trial court denied the motion, noting the fact court-appointed counsel "does a lot of business in this [Posey] county" and observing that "the resumes from each of the jurors ... are available."

Defendant asserts the refusal to grant him local counsel denied him equal protection and due process of law. He cites no legal authority for that proposition; he argues that *voir dire*, in light of the publicity his case had received, was of "extreme importance," and that local counsel would have had "superior knowledge about the biases, prejudices and pre-dispositions of the jurors."

▮ Conceding the validity of the latter point in its general sense, it is very questionable whether local counsel would have had more insight into the particular predilections of prospective jurors towards defendant's case. That was a matter which rested on each prospective juror's exposure to the publicity and the influence it had worked on the individual's ability to approach the case impartially. Defendant's pauper counsel was no more incapable of delving into the specifics of that question than local counsel; the questions formulated on *voir dire* tested the particularities of each juror's potential bias and yielded a panel whose impartiality was sworn.

Without question *voir dire* is an art. But, in the circumstances before us, only speculation and conjecture could lead us to the conclusion that defendant was denied effective *voir dire* and, in turn, deprived of a fair trial. For that reason, we find no error in the court's refusal to appoint local counsel to aid in the jury selection.

### IV.

Prior to trial, defendant tendered a motion *in limine* seeking to prohibit the state from introducing evidence of other charges pending against defendant. The motion was based on the alleged prejudice the evidence would imbue in the jury against defendant. At the hearing on the motion, the trial court heeded defendant's suggestion to defer ruling on the motion until it was determined whether "lawful detention," as employed in the escape statute, would be in issue.

Prior to trial, defendant sought to require the state to stipulate he had been in "lawful detention" at the time of the charged escape. Acquiescing in the court's conclusion that the state could not be required to stipulate to a material fact, defendant argued the motion *in limine* could be granted to limit testimony to language that he was in "lawful detention" when he escaped. The court denied the motion *in limine* on the basis the arrests were material to the issues at trial.

Over defendant's objections at trial, certified copies of the various charges pending against him at the time of his escape were admitted, together with testimony of three witnesses—the sheriff, jailer, and clerk—who verified the authenticity of the documents and reiterated the existence of the charges. In sum, the jury was informed of seven separate charges, including a previous escape, which had been pending against defendant at the time of the escape charged.

■ Evidence of separate, independent, and distinct crimes is inadmissible to establish a defendant's guilt of a charged crime, except to show intent, motive, purpose, identification, or a common scheme or plan. *Pierce v. State*, (1977) 267 Ind. 240, 369 N.E.2d 617; *Woods v. State*, (1968) 250 Ind. 132, 235 N.E.2d 479. Here, the evidence of pending charges not only served to establish the "legality" of defendant's confinement but, significantly, also bore on the question of defendant's motive for and intent to escape. Defendant argues in issue VI, *infra*, that there was no evidence to indicate he acted in concert with Mike Evans, the other escapee. The severity of the penalties potentially awaiting him for the numerous charges pending tended to disprove that claim. Consequently, there was no error in admitting the evidence. *Id.*

Defendant additionally asserts the evidence of pending charges unduly prejudiced his ability to obtain a fair trial in phase two of the bifurcated trial. The admission of the six pending charges during the trial on the escape charge, he maintains, adversely influenced the jury's ability to impartially assess the habitual offender count. As defendant argues, that evidence could not be and was not admitted during the habitual offender phase, for the charges had not been reduced to convictions. Ind.Code § 35–50–2–8, *supra; McPhearson v. State*, (1966) 247 Ind. 579, 219 N.E.2d 907.

■ Defendant's contention cannot be characterized as wholly without merit; some prejudice could arguably inure to defendant by virtue of the jury's exposure to information which surfaces during phase one of the bifurcated habitual criminal procedure dictated in Ind.Code § 35–50–2–8, *supra.* Here, however, the record reveals no dispute that the jury was properly admonished and instructed regarding its duties and the proof relevant to the habitual offender question. Moreover, the evidence revealed the existence of the underlying convictions necessary to support the jury's conclusion. Defendant's contention must consequently fail. *Page v. State*, (1979) Ind., 395 N.E.2d 235; *Jones v. State*, (1977) 267 Ind. 205, 369 N.E.2d 418.

## V.

Defendant asserts the trial court erred when it permitted the state to introduce a report of the alleged escape entitled "Statement of William Cross, Sr." The statement was admitted over defendant's objection during the state's redirect examination of Cross, the Posey County Jailer. During cross-examination of Cross, defendant had utilized the report to impeach his testimony concerning which door defendant had used to exit the jail during his escape.

Defendant maintains the report was improperly admitted for two reasons. First, he argues that the fact the report was not signed by Cross precluded its admission under *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482. In addition, he maintains the report was inadmissible because portions of it "were prepared" by a deputy prosecuting attorney.

The report in question consists of a one-page, handwritten document wherein, in narrative form, the events of the alleged escape were detailed. The document, which is unsigned, bears two types of handwriting. The title, date, and entire substantive content appear in one style of penmanship; interposed below the caption, in a second chirography, are four words. The first is indecipherable; the remaining words read "Jail Break—Evans—E.U." Jailer Cross testified he gave the statement to the deputy prosecutor, and that "part" of the handwriting was made by the deputy prosecutor.

■ While, as defendant emphasizes, our decision in *Patterson* involved signed statements, that factor was not cruicial to our disposition of that case, as its progeny indicates. *See, e.g., Carter v. State*, (1980) Ind. App., 412 N.E.2d 825; *Raymer v. State*, (1978) Ind.App., 381 N.E.2d 109. Rather, as in *Patterson*, the dispositive factor which warranted the admission of the report as substantive evidence was the presence of Cross, who testified the statement was given by him, and his availability for cross-examination. Furthermore, the matters con-

tained in the report merely reiterated the testimony which Cross gave at trial. There was no error here. *Patterson v. State, supra.*

## VI.

Defendant next contends the trial court erred in giving particular instructions and in refusing other instructions which he tendered. He first challenges the court's instructions numbered 5 and 6, wherein the jury was informed that defendant was criminally liable for the probable and natural consequences of the acts of his confederates committed in the furtherance of their common design or objective. Defendant maintains there was no evidence to indicate he acted in concert with Mike Evans, who wielded the steel bar during their simultaneous escapes. In turn, he asserts the jury was improperly permitted to find him guilty of escape as a class C felony (use of a deadly weapon), rather than a class D felony (no deadly weapon employed or bodily injury inflicted). See Ind.Code § 35–44–3–5, *supra.*

Defendant relies heavily on the testimony of Evans, who stated he had not discussed an intention to escape with defendant prior to their simultaneous flight from detention. And, as defendant asserts, mere presence at the scene of a crime is not sufficient to prove participation in a crime. *Harris v. State*, (1981) Ind., 425 N.E.2d 154.

Nonetheless, presence at the scene is one factor which the jury may consider in assessing a defendant's conduct, together with a failure to oppose a crime, companionship with one engaged therein, and a course of conduct before, during, and after an offense which tends to indicate complicity. Proof may occur by either direct or circumstantial evidence. *Id.; Young v. State*, (1978) Ind.App., 373 N.E.2d 1108.

■ While there was no direct evidence to establish that defendant and Evans acted together, there was abundant circumstantial evidence to indicate the escapees acted in concert. Evans was defendant's uncle; the minimum security atmosphere at the Posey County Jail provided detainees with

the opportunity for conversations amongst themselves. Jailer Cross testified that as Evans confronted him with the steel bar, defendant approached Cross from behind. Evans held Cross at bay, stating, "We're going," while defendant fled the building. The two escapees then fled together to Indianapolis. No other prisoners fled the jail.

This evidence was more than sufficient to justify the inference the two had acted in concert, and warranted submission of the question to the jury. *Harris v. State, supra.* The trial court did not err in instructing the jury on the law embodied in instructions 5 and 6. *Frasier v. State*, (1974) 262 Ind. 59, 312 N.E.2d 77.

■ Defendant also maintains the court erred in giving its final instruction number 13, wherein the jury was informed that attempted escape was a lesser and included offense of escape, the charged crime. We agree. As defendant asserts, there was no dispute raised by the evidence with respect to whether defendant's conduct constituted escape or merely an attempt to escape. Consequently, while attempted escape is without question an included offense of escape as statutorily defined, the instruction was not warranted by virtue of the evidence presented at trial. *Lawrence v. State*, (1978) 268 Ind. 330, 375 N.E.2d 208; *Hash v. State*, (1972) 258 Ind. 692, 284 N.E.2d 770; *Roddy v. State*, (1979) Ind. App., 394 N.E.2d 1098.

Moreover, the instruction was inappropriate due to the failure of the trial court to inform the jury of the role the lesser offense would have played in their deliberations. There was no companion instruction given to the effect that if the jury found defendant did not commit the element or act which distinguished the crime charged from the lesser and included offense, it could find the defendant guilty only of the latter crime. That information must be presented to the jury together with an instruction on an included offense. *Smith v. State*, (1981) Ind., 422 N.E.2d 1179.

Nevertheless, the trial court's error was harmless. The evidence is uncontradicted

the escape occurred; the only dispute was whether defendant acted in concert with escapee Evans. The instruction on attempted escape was consequently surplusage wholly harmless, which does not warrant reversal of defendant's conviction. *Pinkerton v. State*, (1972) 258 Ind. 610, 283 N.E.2d 376.

Defendant next argues the trial court erred in refusing to give his tendered instruction number 5, which read:

"The Court instructs you that the law presumes that persons charged with crime are innocent until they are proven by sufficient evidence to be guilty beyond a reasonable doubt. This legal presumption of innocence must be regarded by you as evidence in favor of the accused defendant to the benefit of which the defendant is entitled."

Defendant maintains the instruction embraced the law regarding the presumption of innocence as established in *Coffin v. United States*, (1895) 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481. The state responds the instruction did not accurately represent the concept of the constitutionally-mandated presumption of innocence which, the state concomitantly asserts, was adequately explained in other instructions given by the court.

■ We agree with the state. The presumption of innocence accorded each defendant is not "evidence" to support the innocence of the accused. Rather, it is merely a rule of law which describes the base point from which the jury must begin its assessment of the evidence and its deliberations thereon. It is in this latter conceptual sense that the jury must understand and apply the presumption of innocence. *See, e.g., Taylor v. Kentucky*, (1978) 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468; *Jalbert v. State*, (1928) 200 Ind. 380, 165 N.E. 522; *Simmons v. State*, (1979) Ind. App., 385 N.E.2d 225. Defendant's contention was succinctly refuted by Wigmore:

"[I]t the presumption of innocence] cannot be regarded as 'matter of evidence.' No presumption can *be* evidence; it is a rule about the duty of producing evidence

(§ 2490 *supra*). This is, in itself, only a matter of the theory of presumptions ...." J. Wigmore, 9 *Wigmore on Evidence* § 2511, p. 533 (Chadbourn Revision 1981) (emphasis original).

This conclusion followed from analysis of the role the presumption plays in the jury system:

"[I]n a criminal case the term does convey a special and perhaps useful hint, over and above the other form of the rule about the burden of proof, in that it cautions the jury to put away from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment, and to reach their conclusion solely from the legal evidence adduced. In other words, the rule about burden of proof requires the prosecution by evidence to convince the jury of the accused's guilt; while the presumption of innocence, too, requires this, but conveys for the jury a special and additional caution (which is perhaps only an implied corollary to the other) to consider, in the material for their belief, *nothing but the evidence*, i.e., no surmises based on the present situation of the accused. This caution is indeed particularly needed in criminal cases ...." *Id.* at 530 (emphasis original; footnotes omitted).

On this basis the Supreme Court in *Agnew v. United States*, (1897) 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624, and *Holt v. United States*, (1910) 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, impliedly overruled its language in *Coffin v. United States, supra*, upon which defendant relies.

The trial court did not err in refusing to give defendant's instruction number 5, for it contained an incorrect statement of law. *Richey v. State*, (1981) Ind., 426 N.E.2d 389; *Davis v. State*, (1976) 265 Ind. 476, 355 N.E.2d 836.

Defendant also asserts the trial court erred in giving its instructions numbered 9, 10, and 13, which defined the offense of escape, the statutory term "deadly weapon," and "attempted escape." In support of his contentions, he reiterates arguments previously rejected herein.

Instructions 9 and 10, defendant argues, were improper because his fellow escapee's use of a deadly weapon could not be imputed to him. We have previously indicated the evidence was sufficient to support the conclusion that defendant and Evans acted in concert during their simultaneous escapes. In turn, the evidence consequently justified the instructions on "deadly weapon" and the effect the usage of a deadly weapon had on the degree of the offense committed.

We also held the instruction on "attempted escape" was improperly given, but that the error was harmless. No reversible error has been demonstrated here.

### VII.

Defendant maintains the trial court erred when, during the habitual offender phase of the proceedings, it permitted state's witness Don Garrett to testify that fingerprints on various exhibits belonged to the same individual. The exhibits, which each bore a full set of fingerprints, were documents drawn from the files of the Federal Bureau of Investigation, the Posey County Sheriff's Department, and the Indiana State Farm in Greencastle. The documents were offered to prove defendant's prior felony convictions.

At trial, defendant objected on the basis that Garrett's qualifications as an expert had not been established. On appeal, however, defendant asserts that Garrett's testimony was improperly admitted because the validity of his methods and the manner in which he reached his conclusion had not been established. Inasmuch as this basis for the exclusion of Garrett's testimony was not pursued at the point when his conclusion was admitted, the claim of error has been waived. *Drake v. State*, (1979) Ind., 397 N.E.2d 600; *Reid v. State*, (1978) 267 Ind. 555, 372 N.E.2d 1149.

### VIII.

Defendant next maintains the trial court erred when it refused to appoint a psychologist to examine defendant prior to the ha-

bitual offender proceeding. Defendant, an indigent, sought the examination to establish his defense to the habitual offender charge. He hoped to persuade the jury he was not inclined to the habitual commission of felonies and that it should exercise its discretion to determine he was not an habitual offender within the meaning of the term. Ind.Code § 35–50–2–8, *supra*. Deprivation of the psychological testimony denied him his defense and, in turn, due process of law, he urges.

It is well established that due process does not necessarily require that, at public expense, any expert the defendant believes helpful to his defense must be appointed by the court. *Smith v. Baldi*, (1953) 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549; *Himes v. State*, (1980) Ind., 403 N.E.2d 1377; *Roberts v. State*, (1978) 268 Ind. 127, 373 N.E.2d 1103. Unlike requests for a court-appointed psychiatrist made pursuant to the entry of an insanity plea and Ind. Code § 35–5–2–2 (Burns 1979 Repl.), the legislature, in enacting Ind.Code § 35–50–2–8, *supra*, did not intend the question whether habitual offender penalties should attach would be resolved by evidence regarding defendant's general mental predilections toward the future commission of criminal acts. Instead, the legislature indicated the question should turn on defendant's record of criminal behavior. *Whitacre v. State*, (1980) Ind., 412 N.E.2d 1202; *Comstock v. State*, (1980) Ind., 406 N.E.2d 1164. Any doubt as to that interpretation of the habitual offender statute was resolved when, subsequent to the initiation of these proceedings, the legislature eliminated the discretionary language upon which defendant relies. Effective April 1, 1980, Ind. Code § 35–50–2–8(d), *supra*, reads:

> "A person is an habitual offender if the jury . . . finds . . . that the person had accumulated two (2) prior unrelated felony convictions."

rather than the language "The jury . . . *may* find" (emphasis added) a person is an habitual offender upon proof of two prior felony convictions.

The trial court properly denied defendant's motion for a court-appointed psychologist. A psychological evaluation would have produced testimony not pertinent to the issue before the jury.

## IX.

Defendant concomitantly asserts his right to a fair trial was denied by virtue of the state's reference to the lack of psychiatric or psychological evidence presented during the habitual criminal proceeding. The reference occurred during final argument and in rebuttal to defendant's closing remarks.

During final argument, defense counsel had made reference to the lack of psychiatric or psychological testimony presented by the state. The prosecutor's objection had been sustained by the court. On rebuttal, Prosecutor Gooden again raised the issue:

MR. GOODEN: "It is Mr. Underhill that has caused his own problems. It's been proven beyond any doubt that he has committed two prior unrelated felonies and under our statute that's the definition of an habitual offender. The Court is going to instruct you of the elements and that's it. The Court is not going to give you any other element. That we need to bring a psychiatrist in or we need to bring a sociologist in."

MR. BERGER: "Objection. He has already made an objection to that argument now he has opened the door. I request permission to address the jury at the close of his argument."

On appeal, defendant asserts the court either should have granted his request for a mistrial or permitted him to again address the jury. The latter contention, however, was not raised in his motion to correct errors and is consequently waived. Ind.R. Ap.P. 8.3(A)(7); *Bluitt v. State*, (1978) 269 Ind. 438, 381 N.E.2d 458.

The grant or denial of a motion for mistrial rests in the sound discretion of the trial court. Its determination is reversible only where an abuse of discretion is established. *Blackburn v. State*, (1979) Ind., 390 N.E.2d 653; *Thompkins v. State*, (1978) Ind., 383 N.E.2d 347. Here, the trial court promptly admonished the jury to disregard all references to psychological or psychiatric testimony. The admonishment is presumed to cure any potential error or prejudice which might have occurred. *Blackburn v. State, supra; Ballard v. State*, (1974) 262 Ind. 482, 318 N.E.2d 798. Consequently, we find no abuse of discretion in the court's refusal to grant a mistrial. *Blackburn v. State, supra.*

## X.

Defendant next asserts the trial court erred when it admitted state's exhibits 10, 11, 12, and 13 over defendant's objection. He argues the exhibits, which constituted the information, minute sheets, and commitment order in a previous felony, lacked the certification and proof of authenticity necessary to render the documents admissible under Ind.R.Tr.P. 44.

Pursuant to Trial Rule 44, official records such as those at issue here are admissible only "by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy." *Id.; see generally, Eldridge v. State*, (1977) 266 Ind. 134, 361 N.E.2d 155.

We need not decide whether the state's exhibits numbered 10, 11, 12, and 13 complied with the requirements of Ind.R. Tr.P. 44. The record reveals defendant did not object when the state requested and received permission to read the documents to the jury. The admission of the documents was consequently merely cumulative of other evidence. Whether the documents were improperly admitted, any supposed error could only be harmless in nature. *Jackson v. State*, (1980) Ind., 402 N.E.2d 947; *Eldridge v. State, supra.*

## XI.

Defendant next asserts the trial court erred when it refused to grant defendant's motion to withdraw the habitual offender charge from the consideration of the jury. Defendant's motion was prompt-

ed by the prosecutor's statement during final argument that the jury *should,* rather than *may,* find defendant guilty of habitual offender status if the state satisfied its burden of proof. Following defendant's objection, the trial court admonished the jury to disregard the prosecutor's remark. In addition, the admonishment, which is presumed to have cured any error (*Blackburn v. State, supra*), was followed by the court's instruction to the jury embracing the discretionary power accorded the jury under the version of Ind.Code § 35–50–2–8(d), *supra,* then in effect. The trial court did not err in refusing to withdraw the habitual offender charge from the jury's consideration.

## XII.

Defendant maintains the evidence was insufficient to support the jury's conclusion that he was the person who had accumulated the two prior felony convictions which the state placed in evidence. He specifically argues that while testimony established the fingerprint impressions made on state's exhibits 15, 17, and 21 were made by the same person, there was no evidence to establish defendant was the person whose fingerprints appeared thereon.

When confronted with a challenge to the sufficiency of the evidence, this Court examines only the evidence most favorable to the fact-finder's conclusion, together with the reasonable inferences which can be drawn therefrom. If, from that viewpoint, there is substantial evidence of probative value to support the fact-finder's conclusion beyond a reasonable doubt, it will not be set aside. *Moon v. State,* (1981) Ind., 419 N.E.2d 740.

 Here, defendant argues there was no evidence to establish he was the person whose fingerprints appear on state's exhibit 17, a fingerprint file card compiled at the Posey County Sheriff's Department. The card, however, contains the signature of one "Edward L. Underhill," a white male, five feet nine inches tall, one hundred fifty pounds, who was born June 7, 1949. As these descriptive matters paralleled defend-

ant's physical makeup, so Posey County Sheriff Carl Dick testified that he had received Edward Underhill at his jail on January 19, 1979, the day the fingerprints were made, that only one Edward Underhill had ever stayed in the jail during his tenure, and that the named Edward Underhill and defendant were one and the same person. From this testimony, together with the comparative analysis of fingerprints contained on proof of two prior felony convictions, it cannot be said the evidence was insufficient to establish defendant was the subject of the prior felony convictions.

## XIII.

Defendant next asserts that proof of a 1968 theft offense should not have been permitted into evidence. In support of his contention, he argues three independent bases: (1) the felony was too remote in time to form the basis for the habitual offender finding; (2) the documents regarding the 1968 felony were not properly authenticated; and (3) the documents did not reveal defendant was convicted of the 1968 felony or that he was advised of his constitutional rights before he pled guilty to the charge.

 In support of his assertion that the 1968 felony was too remote in time to support the habitual criminal charge, defendant relies on language contained in Ind. Code § 35–50–2–8, *supra,* as amended by the legislature in 1980. Therein, the legislature added the following language to the habitual offender statute:

"If the court finds that ten (10) years or more have elapsed between the date the person was discharged from probation, imprisonment, or parole (whichever is later) for the last prior unrelated felony conviction and the date he committed the felony for which he is being sentenced as an habitual offender, then the court may subtract up to twenty-five (25) years from the additional fixed term of thirty (30) years." Ind.Code § 35–50–2–8(e), *supra.*

The legislature's language deems the date of previous felony convictions relevant only

insofar as the penalty to be assessed; it does not indicate that prior felony convictions are not proof of a defendant's habitual offender status. Moreover, the discretionary power granted the trial court is applicable only if the "last prior unrelated conviction" occurred ten years prior to the commission of the underlying felony. Here, defendant's last prior unrelated felony conviction occurred in 1977. Defendant's reliance is misplaced; the remoteness of the 1968 felony was a matter for the jury to weigh in its assessment of the habitual offender charge. *Owens v. State,* (1981), Ind., 427 N.E.2d 880.

■ Defendant's contention that the documents were not properly authenticated also lacks merit. The documents were certified as "true and accurate" copies of documents contained in the files of the Indiana Department of Correction and the Knox Superior Court by the respective keepers of those files, Rosemary Green and George Klein. Defendant's dispute lies in the fact that subsequent to Klein's signature as Clerk of the Knox Superior Court, the initials "mk" appear. The authentication necessary to justify admission of an official record, however, may be made by the deputy of the caretaker of the documents. Ind. R.Tr.P. 44(A)(1). There was no reversible error here. *Griffin v. State,* (1981) Ind., 415 N.E.2d 60; *Eldridge v. State,* (1977) 266 Ind. 134, 361 N.E.2d 155.

■ Defendant's assertion that the documents did not establish he was "convicted" of the 1968 felony charge also fails. This Court has held that official records of the Department of Correction may be used to establish the fact of a defendant's prior felony conviction. *Brown v. State,* (1979) Ind., 385 N.E.2d 1148. Here, the documents drawn from Correction's files indicate defendant's commitment followed from the Knox Superior Court's judgment on the 1968 felony. And his assertion that he was not properly advised of his constitutional rights prior to pleading guilty to that charge is wholly without merit. In an habitual offender proceeding, the burden is

upon the defendant to establish that his prior convictions are invalid. *Collins v. State,* (1981) Ind., 415 N.E.2d 46; *Hall v. State,* (1980) Ind., 405 N.E.2d 530. Defendant offered no evidence to that effect.

The evidence of the 1968 felony conviction was properly admitted. It supports the habitual offender determination notwithstanding its remoteness in time. There was no error here.

## XIV.

■ Defendant next contends his 1977 conviction for theft of property with a value of less than $100 could not be used as evidence to support the habitual criminal charge. He maintains his conviction was not a "felony" within the meaning of the term as defined at the time his offense was committed. A similar assertion was made in *Wise v. State,* (1980) Ind., 400 N.E.2d 114, where defendant was fined but not imprisoned for a 1976 theft conviction. There, we noted defendant "might have been" sentenced from one to five years for his crime under the statute then in effect. *See* Ind. Code § 35–17–5–12 (Burns 1975). Consequently, defendant's assertion was rejected. Likewise, in *Young v. State,* (1970) 254 Ind. 379, 384–85, 260 N.E.2d 572, 576, this Court held the crime defined in Section 12 "clearly" qualified "as a felony." The penalty actually assessed and the fact the conviction followed from a plea of guilt, as relied on by defendant, are consequently irrelevant. The 1977 conviction was properly placed into evidence as support for the habitual criminal charge.

## XV.

■ Defendant maintains the trial court erred when it refused to instruct the jury on the penalty which would attach upon an habitual offender finding. This Court has recently and repeatedly upheld trial court's refusals to so instruct the jury. *See, e. g., Munsey v. State,* (1981) Ind., 421 N.E.2d 1115; *Bailey v. State,* (1980) Ind., 412 N.E.2d 56; *Drake v. State,* (1979) Ind., 397 N.E.2d 600. Defendant's argument ignores the existence and rationale of these precedents and is without merit.

## XVI.

■ Defendant argues the thirty-eight year sentence was manifestly unreasonable in light of the "peculiar facts of this case." In support of his contention, he relies on the nonviolent nature of his prior felonies, as well as the alleged deficiencies of proof regarding those convictions which we have heretofore rejected. He argues the sentence does not fulfill the "spirit" of the habitual offender statute and constitutes "cruel and unusual punishment."

A similar argument was rejected by this Court in *Rodgers v. State*, (1981) Ind., 422 N.E.2d 1211:

> "Just as this Court does not sit as a super-legislature to second-guess the criteria established by the General Assembly for the imposition of habitual offender penalties, neither is it our prerogative to interfere with the discretionary power of the state to invoke those penalties. Ind. Code § 35–50–2–8, *supra; Comstock v. State*, (1980) Ind., 406 N.E.2d 1164; *Norris v. State, supra* [(1979) Ind., 394 N.E.2d 144]; *Rummel v. Estelle*, (1980) 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382." *Id.* at 1216.

That the sentence cannot be said to constitute cruel and unusual punishment was explained in *Rummel v. Estelle*, (1980) 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382.

For all the foregoing reasons, the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.