Curtis Lee HOLT, Appellant,

v.

STATE of Indiana, Appellee.

No. 283 S 51.

Supreme Court of Indiana.

May 30, 1984.

William L. Soards, Soards & Carroll, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Latriealle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Curtis Lee Holt was convicted by a jury in the Marion Superior Court of class A felony rape, class C felony battery and two counts of class A felony robbery. He subsequently was found by the same jury to be a habitual offender. The trial court accordingly sentenced Appellant to consecutive imprisonment terms totalling one hundred and twenty years. The specific sentences imposed were thirty years for rape, thirty years for robbery and thirty years for robbery which sentence was enhanced by thirty years for the habitual offender finding. The trial court vacated the verdict on Appellant's battery conviction since it was merged into the enhanced robbery conviction. Appellant now directly appeals and raises the following six issues:

1. Appellant's request for new trial counsel;

2. admission of certain photographs;

3. certain remarks by the prosecutor;

4. admission of certain medical testimony;

5. sufficiency of the evidence supporting the rape and robbery convictions; and

6. sufficiency of the evidence supporting the habitual offender finding.

The facts adduced at trial show that Appellant forced his way into the Indianapolis home of Hoy Campbell and Barbara Romine at approximately 8:30 a.m. on May 10, 1981. During his six hour stay, Appellant beat Campbell, bound him with wire and

shot him with a B–B gun in his eye. Campbell lost his sight in that eye. Appellant also beat, bound and twice raped Romine. Appellant took $40 belonging to Romine and $3 and a watch belonging to Campbell. Both Campbell and Romine were familiar with Appellant and unequivocally identified him as their attacker. A neighbor also identified Appellant as the man he saw chasing Campbell on May 10 after Campbell had been shot in his eye. The police were called and both victims were medically examined promptly after the attacker finally left.

I

Appellant first contends that the trial court erred by not appointing a new public defender to represent him after he stated that he did not consider himself adequately represented by his appointed counsel and wanted a new public defender. The record shows that the trial court appointed a public defender to represent Appellant on August 19, 1981. On December 16, 1981, Appellant filed a Motion to Proceed *Pro Se* claiming that he was "competent" and "more than adequately capable" of presenting his own case. On April 6, 1982, Appellant filed various motions including a motion for continuance asking that he not represent himself *pro se* but have a new attorney appointed for him. The record further shows that at the start of Appellant's trial on June 28, 1982, the following testimony was made:

"*Mr. Sexson* [Appellant's public defender]: Before you bring the Jury back, Mr. Holt wanted to go on record as stating the reason he didn't want me to represent him in this case.

*Court:* He's free to make a record, if he wishes. If you want to state whatever you wish for the record, you may proceed.

*Defendant Holt:* The number one reason, I have requested that Mr. Sexson have (sic) filed Motions in my behalf since my arrest which he has (unintelligible) yet. Motions such as Motion to Suppress Evidence, documents and Police records, dating back from September of '79 to November of '80. He has not did (sic) these things for me as yet, which is relevant to this case. I have asked him to file a Motion to subpoena my blood type, or get a blood test ran (sic) on me. It is said that this is irrelevant to the case, which I feel is very relevant to the case. I have asked him to file Motion for change of Courts. He said this would be denied by the Judge, and no other reasons. I have asked him to file Motions to dismiss the charges which are against me here, not filed yet. I have asked him to file Motions for Deposition, he has not filed yet. I have requested Mr. Sexson to remove hisself (sic) from this case because he has shown me lack of interest in defending my innocent (sic) by trial. Also he has shown me that he feels that I am guilty of the crime, of a crime I did not commit, nor entertain the thought of committing. Mr. Sexson has not contacted witnesses for my—in my behalf, by phone or in person. For what reason unknown to me at this present moment. Witnesses that I wanted to call, one witness' job is in jeopardy if he comes to Court today, because of close relationships with the job, his job, and Defendant's—used to be, I mean working place. Another witness is afraid that charges would be filed if she came, I mean if he came up here and testified in my behalf. I'm asking for justice I'm not asking for no more. Again, I say that I would like Mr. Sexson be removed from being my Defense Counselor, because I do not fee (sic) conficent in his profession, and I would like this to be on record."

The trial court possessed the discretion to deny Appellant's request for a new public defender. Accordingly, we will review the trial court's ruling only for an abuse of that discretion. *Houze v. State*, (1982) Ind., 441 N.E.2d 1369. Appellant fails to show how he was incompetently represented by his appointed counsel. Specifically, he neither shows how the motions he desired would have advanced his cause nor explains what testimony any additional

witnesses would have provided. The record only suggests that Appellant, untrained in the law, became dissatisfied with his efforts to dictate the outcome of these proceedings. During his sentencing hearing, Appellant was asked by the trial court whether he had any specific allegations or complaints about the performance of his appointed trial counsel. Appellant replied:

"Well one, I never should have been found guilty. I will just put it that way. I just shouldn't never have been found guilty."

This Court has held that "an acquittal is not the yardstick by which the adequacy or effectiveness of representation is measured." *Dean v. State*, (1982) Ind., 433 N.E.2d 1172, 1187, *supplemented* Ind., 441 N.E.2d 457. Moreover, we have held that counsel is presumed to have provided competent representation absent clear and convincing evidence to the contrary. *Baker v. State*, (1980) 273 Ind. 304, 403 N.E.2d 1069, *cert. denied* 449 U.S. 882, 101 S.Ct. 232, 66 L.Ed.2d 106. We now hold that Appellant was competently represented at trial and that the trial court did not abuse its discretion by denying Appellant's request for a new public defender.

## II

■ Appellant also contends that the trial court erred by admitting into evidence certain photographs of the victims which allegedly were inadmissible and prejudicial. It is well-established that the admission of photographs into evidence is within the sound discretion of the trial court and reversal will be granted only upon a showing of abuse of that discretion. To be admissible, a photograph must be relevant. Relevancy of a photograph depends upon whether a witness would be permitted to describe the objects or scenes depicted by the photograph. *Finch v. State*, (1984) Ind., 459 N.E.2d 1184; *Drollinger v. State*, (1980) Ind., 408 N.E.2d 1228.

Appellant now objects to six photographs identified as State's Exhibits 1, 2, 3, 4, 11 and 12. During trial, however, Appellant objected only to Exhibits 1, 2, and 12. In fact, Appellant's trial counsel specifically stated that he had no objection to Exhibits 3, 4, and 11. Appellant therefore waived his chance to contest Exhibits 3, 4, and 11. *Dean, supra*.

■ State's Exhibit 1 and 2 were introduced through the testimony of Patricia Pettiford, the emergency room nurse who attended to Hoy Campbell shortly after he was beaten and shot in the eye. Pettiford testified that Exhibits 1 and 2 were "fair and accurate representations" of what Campbell looked like when she examined him in the hospital after his attack. At trial, Appellant did not object that these photographs were gruesome or prejudicial. Instead, he objected that these photographs were inadmissible because they were not taken at the hospital and therefore could not depict Campbell as he looked when Pettiford examined him. Although the photographs show a background which indicates a place other than inside the hospital, Pettiford nonetheless testified that they were true and accurate representations of Campbell as she saw him. This is sufficient to justify the admission of Exhibits 1 and 2. *Finch, supra*. The photographs were admissible.

■ State's Exhibits 3, 4, 11 and 12 depict Barbara Romine as she looked after being attacked. Hoy Campbell authenticated these photographs by testifying that they showed how Romine looked to him on May 10th after her attack. Appellant now argues that these photographs should not have been admitted since they apparently were taken several days after May 10th and Campbell did not know who took them. Once again we find that these photographs were properly authenticated as true and accurate representations of what the witness was testifying about and therefore were properly admitted. There is no error on this issue.

## III

■ Appellant next alleges that the trial court erred by allowing the prosecutor to comment during trial that Barbara Romine was, as Appellant states it, a "border-

line retarded person." According to Appellant's brief, however, the record indicates that the prosecutor never stated that Romine was "retarded." Instead, the record shows that that the prosecutor twice commented during *voir dire* that the victims were "poor" and "uneducated." The prosecutor further commented during his opening statement as follows:

"... Well, Barbara as I have said before, nor is Hoy, they are not terribly intelligent people, in fact they are probably marginal. Their educations are limited...."

Thereafter, the prosecutor stated during his final argument:

"... if you ignore the adult responsibilities that are placed upon you in this instance, then you take the Hoy Campbells' and the Barbara Romaines', and you tell them, 'You don't have the protection of the law, because you are uneducated, and you are poor; we don't protect you'...."

The record indicates that Appellant never objected to any of these comments by the prosecuting attorney and therefore has not preserved this issue for review. *Dean, supra.* Moreover, Appellant has not demonstrated how these allegedly improper comments specifically prejudiced him. Both victims testified at length during Appellant's trial thereby affording the jury an ample opportunity to draw its own conclusion about their mental states. We find no error.

## IV

 Appellant next alleges that the trial court erred by allowing medical testimony that Barbara Romine had intercourse within 48 hours of her medical examination while not requiring the State to provide "complete evidence as to the types of tests that can be run showing the blood type of a possible attacker in this situation." The record shows that Rosamond Everard, a forensic serologist, testified that she evaluated several slides and samples taken from Romine when medically treated shortly after she allegedly was raped. On cross-ex-

amination, the following testimony was given:

"Q. Mrs. Everard, did you do a test when you discovered the sperm, to determine the blood type of the person that would have secreted the sperm?

A. No, I did not.

Q. Is that test possible?

A. It is possible, but more than likely it's not requested because—due to the fact that 80% of the population is a secreter and it would depend on the blood type of the victim and the suspect.

\*　　\*　　\*　　\*　　\*　　\*

Q. The sperm that was on the slide, are there tests that you could perform to see what blood type the person would have, that secreted that sperm?

A. You can try it, but it doesn't always work.

Q. Did you try it in this particular case?

A. No, I did not.

Q. What ......

A. ...... it's not a conclusive test."

Appellant now argues that Everard's prior testimony that Romine had intercourse within 48 hours of her examination misled and prejudiced the jury because it implied that Appellant raped Romine without offering conclusive proof since the blood tests were not made. Appellant also argues that Everard's testimony was not relevant because it did not in any way prove that Appellant was the person who had intercourse with Romine. Notwithstanding Appellant's arguments, the record once again indicates that Appellant made no objection at trial regarding Everard's testimony and made no motion to strike. Accordingly, this issue is waived. *Dean, supra.* Moreover, we find that Everard's testimony was relevant to prove that Romine had intercourse which, of course, is a necessary element of proof to establish the State's rape case against Appellant. There was no error on this issue.

## V

■ Appellant next claims that there was insufficient evidence to support his rape and robbery convictions. We disagree. Contrary to what Appellant mistakenly thinks, his rape and robbery convictions rest upon the direct evidence presented by Hoy Campbell and Barbara Romine. This Court consistently has held that we will neither reweigh the evidence nor determine the credibility of the witnesses when conducting a sufficiency of the evidence review. *Napier v. State*, (1983) Ind., 445 N.E.2d 1361, *reh. denied.* Accordingly, we find ample evidence of probative value to support Appellant's rape and robbery convictions.

## VI

■ Finally, Appellant claims that there was insufficient evidence to support his habitual offender finding. Specifically, Appellant argues that the State could show only that he had one previous and unrelated felony conviction since his theft conviction in 1973 constituted a misdemeanor. In 1973, Appellant was convicted of theft of property under $100 in value and was sentenced to serve 364 days at the Indiana State Farm. He argues that this theft conviction could not be a felony because he was not punished with a term in the State Prison. He relies upon Ind.Code § 35-1-1-1 (Burns 1975) [repealed effective October 1, 1977] which states:

> "All crimes and public offenses which *may* be punished with death or imprisonment in the state prison shall be denominated felonies: all [and] all other offenses against the criminal law shall be denominated misdemeanors." (emphasis added).

Appellant apparently overlooks the significant "may" in § 35-1-1-1. This Court already has decided a similar issue in a way adverse to Appellant. *See Underhill v. State*, (1981) Ind., 428 N.E.2d 759 (Issue XIV). We now find that a person convicted in 1973 of theft of property having less than $100 in value could have been imprisoned in the State Prison for not less than one year nor more than five years or imprisoned for not more than one year or fined or both imprisoned and fined pursuant to Ind.Code § 35-17-5-12(1) (Burns 1975). Accordingly, we find that Appellant's 1973 theft conviction constituted a prior and unrelated felony conviction. Appellant was convicted of armed robbery in 1974. Accordingly, we also find that Appellant's habitual offender finding was supported by sufficient evidence. There is no error.

Finding no error, we affirm the trial court in all things.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.